**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| JANE DOE AND JOHN DOE,<br><br><br>　　　　　　　　　　　Plaintiffs,<br>v.<br><br>HEATHER GERKEN, ELLEN COSGROVE,<br>YASEEN ELDIK, and YALE UNIVERSITY,<br><br>　　　　　　　　　　　Defendants. | Case No. 3:21-cv-01525 |

**DEFENDANTS' MEMORANDUM OF LAW**
**IN OPPOSITION TO**
**PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER (ECF #2)**

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 1

BACKGROUND ....................................................................................................... 3

ARGUMENT ............................................................................................................ 5

   A.  The Federal Rules Require Almost All Plaintiffs to Identify Themselves. ....................... 5

   B.  Plaintiffs Have Not Shown They Should Be Allowed to Litigate Pseudonymously........... 8

     1.  This Action Does Not Involve Highly Sensitive Matters ................................ 8

     2.  Identifying Plaintiffs Would Not Subject Anyone to Retaliatory Physical or Mental Harm ............................................................................................................. 10

     3.  Identifying Plaintiffs Would Not Prevent Other Harms................................ 12

     4.  Plaintiffs Are Not "Particularly Vulnerable" to the Possible Harms of Disclosure ....... 14

     5.  This Case Challenges the Actions of Private Parties ................................... 14

     6.  Defendants Will Be Prejudiced If Plaintiffs Proceed Pseudonymously ..................... 14

     7.  Plaintiffs' Identities Have Not Been Kept Confidential................................ 17

     8.  Having Plaintiffs Disclose Their Identities Would Further the Public's Interest in this Case ............................................................................................................. 18

     9.  The Public's Interest in Knowing Plaintiffs' Identities Is Not "Atypically Weak" ....... 20

     10.  Alternative Mechanisms Exist to Provide Any Needed Protection for Plaintiffs ...... 20

CONCLUSION.......................................................................................................... 21

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*A.B. v. C.D.*,
    2:17-cv-5840, 2018 WL 1935999 (E.D.N.Y. Apr. 24, 2018)..............................................18

*Abdel-Razeq v. Alvarez & Marsal, Inc.*,
    No. 14 Civ. 5601(HBP), 2015 WL 7017431 (S.D.N.Y. Nov. 12, 2015)..............10, 12, 13, 19

*Anonymous v. Medco Health Sols., Inc.*,
    588 F. App'x 34 (2d Cir. Dec. 16, 2014) ...............................................................21

*Doe v. City Univ. of N.Y.*,
    21 Civ. 9544 (NRB), 2021 WL 5644642 (S.D.N.Y. Dec. 1, 2021).......................................15

*Doe v. Del Dio*,
    241 F.R.D. 154 (S.D.N.Y. 2006) .........................................................................15

*Doe v. Delta Airlines, Inc.*,
    310 F.R.D. 222 (S.D.N.Y. 2006), *aff'd*, 672 F. App'x 48 (2d Cir. Nov. 29,
    2016) ...................................................................................................6, 18

*Doe v. Delta Airlines Inc.*,
    672 F. App'x 48 (2d Cir. Nov. 29, 2016) ..............................................................19

*Doe v. Fedcap Rehab. Servs., Inc.*,
    17-CV-8220 (JPO), 2018 WL 2021588 (S.D.N.Y. Apr. 27, 2018) .....................................7, 14

*Doe v. Freydin*,
    21 Civ. 8371 (NRB), 2021 WL 4991731 (S.D.N.Y. Oct. 27, 2021) ..........................11, 12, 14

*Doe v. National Conference of Bar Examiners*,
    1:16-CV-264, 2017 WL 74715 (E.D.N.Y. Jan. 6, 2017).........................................9

*Doe v. NYSARC Tr. Serv., Inc.*,
    No. 1:20-CV-801, 2020 WL 5757478 (N.D.N.Y. Sept. 28, 2020)............................8

*Doe v. NYU*,
    786 N.Y.S.2d 892 (N.Y. Sup. Ct. 2004) ...............................................................9, 10

*Doe v. Paychex, Inc.*,
    Case No. 3:17-cv-2031(VAB), 2020 WL 219377 (D. Conn. Jan. 15, 2020) .................. *passim*

*Doe v. Skyline Autos. Inc.*,
    375 F. Supp. 3d 401 (S.D.N.Y. 2019)....................................................8, 11, 12, 20

*Doe v. Solera Capital LLC*,
    18 Civ. 1769 (ER), 2019 WL 1437520 (S.D.N.Y. Mar. 31, 2019), *vacated on
    other grounds*, 2020 WL 11027792 (S.D.N.Y. Dec. 16, 2020)................................................20

*Doe v. Weinstein*,
    484 F. Supp. 3d 90 (S.D.N.Y. 2020)....................................................................................15

*Doe v. Zinsou*,
    19 Civ. 7025 (ER), 2019 WL 3564582 (S.D.N.Y. Aug. 6, 2019) ........................10, 12, 16, 17

*N. Jersey Media Grp. Inc. v. Doe Nos. 1-5*,
    No. 12 Civ. 6152(VM) (KNF), 2012 WL 5899331 (S.D.N.Y. Nov. 26, 2012) ....................11

*Rapp v. Fowler*,
    --- F. Supp. 3d ----, 2021 WL 1738349 (S.D.N.Y. May 3, 2021)................................... *passim*

*Rivas v. Fischer*,
    780 F.3d 529 (2d Cir. 2015).................................................................................................15

*Rives v. SUNY Downstate College of Medicine*,
    20-cv-621 (RPK) (SMG), 2020 WL 4481641 (E.D.N.Y. Aug. 4, 2020) .............................13

*Roe v. Does 1-11*,
    20-CV-3788-MKB-SJB, 2020 WL 6152174 (E.D.N.Y. Oct. 14, 2020) ........................ *passim*

*Sealed Plaintiff v. Sealed Defendant*,
    537 F.3d 185 (2d Cir. 2008)......................................................................................... *passim*

*United States v. Pilcher*,
    950 F.3d 39 (2d Cir. 2020) (per curiam)..............................................................................7

*Wheeler-Whichard v. Doe*,
    No. 10-CV-0358S, 2010 WL 3395288 (W.D.N.Y. Aug. 25, 2010)....................................7, 8

**Statutes**

Rule 10(a)...................................................................................................................... *passim*

# INTRODUCTION

Through counsel, Plaintiffs allege that Yale Law School administrators retaliated against them by discouraging a professor from hiring them as teaching assistants and damaging their career prospects. On this motion, they seek leave to proceed anonymously. Their brief fails to meaningfully address the familiar and well-settled standard in this circuit for such motions, offering no evidence on the three relevant factors the brief mentions and omitting any discussion of the seven other relevant factors. Their brief, and the complaint on which it is based, also fails to advise the court that the identities of the plaintiffs are already widely known.

The drafters of the Federal Rules of Civil Procedure understood the importance of transparency in our federal courts. Rule 10(a) states unequivocally that the "title of the complaint must name *all* the parties."[1] To be sure, our courts have recognized extraordinary and narrow circumstances when that rule should be set aside and where plaintiffs can proceed pseudonymously: when, for example, sensitive allegations of sexual abuse are at issue, or a plaintiff has legitimate concerns about their physical safety from organized crime or mob violence.

This case comes nowhere near those circumstances, which represent potential tragedies averted by anonymity. This case's genre is not tragedy but soap opera.[2] Two adult law students believe that administrators mishandled their concerns about another student who was gathering information about them and their supposed complicity in a professor's violations of law school

---

[1] Throughout this brief, unless otherwise indicated, emphasis is added. Likewise, unless otherwise indicated, internal citations, quotation marks and brackets are omitted.

[2] *See* David Lat, *As the Yale Law School World Turns*, Original Jurisdiction (Dec. 3, 2021), https://davidlat.substack.com/p/as-the-yale-law-school-world-turns ("Happy Friday. It's time for some updates in everyone's favorite legal-academic soap opera, As the Yale Law School World Turns.") (footnote omitted).

expectations regarding social events with students. They say the law school administrators inaccurately described their lack of candor to another professor who was considering hiring them as teaching assistants. Moreover, public media outlets have already revealed their identities.[3]

Those are not the sort of facts that justify plaintiffs hiding behind false names in court. Plaintiffs here seek anonymity because they worry about having to stand up publicly for what they allege, not because they fear for their lives or because they are vulnerable children. But standing up publicly for what you accuse someone else of doing is the ordinary price of admission to a courthouse.

This case is no exception. The case and the dispute that spawned it have already been the subject of widespread public reporting and discussion. The plaintiffs themselves admit that an entire "dossier" of information about them—including much of the information relevant to their allegations—was broadly disseminated to all Yale Law School students. Their defamation claim is grounded in the idea that professors and judges know all about the information in the "dossier." And this dispute has been followed by mainstream reporters and bloggers across the nation. The public has the right to know who brought their claims and to assess the claimants' candor. That will help the public determine whether, as plaintiffs' counsel publicly insists, this

---

[3] *See* Philip Mousavizadeh, *Law Student Received Coker Fellowship, Undermining Case Against Law School*, Yale Daily News (Dec. 2, 2021, 1:16 AM), https://yaledailynews.com/blog/2021/12/02/law-student-received-coker-fellowship-undermining-case-against-law-school/ (naming both Plaintiffs and reporting that the one calling herself "Jane Doe" received a Coker fellowship, directly contradicting the Complaint); *cf.* Elizabeth Bruenig, *The New Moral Code of America's Elite*, The Atlantic (July 28, 2021), https://www.theatlantic.com/ideas/archive/2021/07/amy-chua-yale-law-school-real-story-dinner-party/619558/ (reporting, before this suit was filed, that the student calling herself Jane Doe "quietly accepted" a Coker fellowship and that the student calling himself John Doe "withdrew his application for the Coker fellowship.").

lawsuit "does advance the public good,"[4] or whether it instead seeks to achieve something very different.

Under well-established Second Circuit precedent, regularly applied by district courts, Plaintiffs' request to mount their attack anonymously should be denied.

## BACKGROUND

Plaintiffs, who currently call themselves Jane Doe ("Jane") and John Doe ("John"), filed their Complaint on November 15, 2021. ECF No. 1. They allege that they enrolled at Yale Law School ("YLS") in 2019. Compl. ¶ 29. The gist of their Complaint is that they associated with YLS professor Amy Chua ("Chua"), who, because of previous experiences with students, had "entered a 'no-socializing' agreement with the University whereby she agreed to not socialize with students off-campus." *See id.* ¶ 35. A third student became concerned that Plaintiffs were violating law school policies and began creating what Plaintiffs melodramatically call a "dossier," which "purported to document the 'secret dinner parties' that Chua was supposedly hosting with [Plaintiffs] and unidentified federal judges." *Id.* ¶ 43. The "dossier," which identifies Plaintiffs by name through screenshots of text messages, claims they had "'repeatedly lied' about the existence of the secret dinner parties." *Id.* ¶ 46. Plaintiffs allege that the "dossier" circulated among the YLS student body. *Id.* ¶ 49. (The Complaint does not allege that Defendants disseminated the "dossier" to the YLS student body.) They allege that Defendants Ellen Cosgrove ("Cosgrove") and Yaseen Eldik ("Eldik") pressured Plaintiffs to confirm the

---

[4] *See* Eda Aker & Philip Mousavizadeh, *Two Students Sue Yale Law Administrators for Alleged Retaliation in Amy Chua Case*, Yale Daily News (Nov. 15, 2021, 4:22 PM), www.yaledailynews.com/blog/2021/11/15/two-students-sue-yale-law-administrators-for-alleged-retaliation-in-amy-chua-case/ (quoting plaintiffs' counsel John Balestriere as saying "I think this lawsuit does advance the public good . . . and people should know").

allegations against Chua contained in the "dossier," *id.* ¶¶ 51–52, and that when Plaintiffs

declined to do so, *see id.* ¶ 54, Cosgrove and Eldik warned them that information about them in

the already-disseminated "dossier" could hurt their reputations. *E.g., id.* ¶ 56. Plaintiffs allege

that Cosgrove advised John not to apply for a clerkship that summer because of the dossier's

"wide publicity." *Id.* ¶ 57. They also allege that Cosgrove told Jane that because of the dossier,

YLS was receiving complaints about her potentially serving as a Coker Fellow (a kind of

teaching assistant), and that if she accepted a Coker Fellowship with a professor, the YLS

administration would approach the professor and share the dossier's allegations. *Id.* ¶¶ 59–60.

Plaintiffs allege that Defendant Heather Gerken ("Gerken") and Cosgrove approached a

professor who was in the process of hiring Coker Fellows to convince him not to hire Jane or

John because of questions about their candor. *Id.* ¶ 67-68. Plaintiffs allege that Gerken and

Cosgrove brought a marked-up copy of the dossier with them and gave it to the professor. *See id.*

¶ 69. That is the sole allegation in the complaint of any Defendant sharing the dossier with

anyone.

Plaintiffs allege that these actions constituted retaliation for their failure to confirm the

dossier's allegations about Professor Chua, and they say their career prospects have suffered.

Jane took a leave of absence from YLS (as many did in the Covid era), *see id.* ¶ 72, and the

Complaint does not say whether she is working or studying elsewhere. John voluntarily resigned

as Gerken's speechwriter. *Id.* Neither has yet applied for judicial clerkships. *Id.* ¶¶ 72–

73.Plaintiffs brought seven causes of action: a breach of contract claim alleging Defendants

violated  a university handbook provision involving non-retaliation, *id.* ¶¶ 75–79, a promissory

estoppel claim also grounded in non-retaliation, *id.* ¶¶ 80–83, an intentional interference with

business relationships claim alleging that Defendants interfered with their relationships with

4

professors and judges, *id.* ¶¶ 84–88, a defamation claim that specifies only the sharing of the dossier, *id.* ¶¶ 89–96, related claims of unreasonable publicity, *id.* ¶¶ 97–100, and false light, *id.* ¶¶ 101–04, that duplicate the defamation claim, and a claim of intentional infliction of emotional distress, *id.* ¶¶ 105–09.

Along with their Complaint, Plaintiffs filed a motion seeking to proceed under false names. Mot. Protective Order, ECF No. 2-1 (the "Motion"). From its first paragraph, the Motion departs from the Complaint. For example, while the Complaint alleges that Defendants shared the dossier with a single professor while conferring with the professor about hiring teaching assistants, the Motion asserts, without citation, that "Defendants have broadly disseminated Plaintiffs' identities in a false report (the 'Dossier')." Mot. 1; *accord id.* at 4. The Motion pays lip service to caselaw governing efforts by plaintiffs to proceed pseudonymously, but it ignores the analysis and holding of those cases, instead asking this Court to craft a new, untethered standard under which plaintiffs can proceed under false names whenever they file suit over matters that they consider "highly sensitive and personal in nature," Mot. 3; *accord id.* at 5, or whenever they think their allegations "include social stigmatizations [sic]," *id.* at 4.

## ARGUMENT

### A.    The Federal Rules Require Almost All Plaintiffs to Identify Themselves.

Federal Rule of Civil Procedure 10(a) straightforwardly requires a complaint to "name *all* the parties." Consequently, "[p]arties to a lawsuit must generally identify themselves." *Doe v. Paychex, Inc.*, Case No. 3:17-cv-2031(VAB), 2020 WL 219377, at *4 (D. Conn. Jan. 15, 2020). Strong policy reasons support that rule requiring transparency. As the Second Circuit has noted, "[t]his requirement, though seemingly pedestrian, serves the vital purpose of facilitating public scrutiny of judicial proceedings and therefore cannot be set aside lightly." *Sealed Plaintiff v.*

*Sealed Defendant*, 537 F.3d 185, 188–89 (2d Cir. 2008). Indeed, those policy reasons are

constitutionally grounded. "The use of pseudonyms runs afoul of the public's common law right

of access to judicial proceedings, a right that is supported by the First Amendment." *Doe v. Delta

Airlines, Inc.*, 310 F.R.D. 222, 224 (S.D.N.Y. 2006), *aff'd*, 672 F. App'x 48 (2d Cir. Nov. 29,

2016). As the Second Circuit succinctly noted, "[t]he people have a right to know who is using

their courts." *Sealed Plaintiff*, 537 F.3d at 189 (quoting *Doe v. Blue Cross & Blue Shield United*,

112 F.3d 869, 872 (7th Cir. 1997) (Posner, J.)).

The constitutionally-grounded and textually-plain requirement of Rule 10(a) gives way

only in extraordinary circumstances. In *Sealed Plaintiff*, the Second Circuit noted that "when

determining whether a plaintiff may be allowed to maintain an action under a pseudonym," any

interest that the plaintiff has in anonymity must be balanced not only against "the public interest

in disclosure"—i.e., the people's right to know who is using their courts—but also "against any

prejudice to the defendant." 537 F.3d at 189. A number of factors help courts determine whether

extraordinary circumstances warrant deviating from the usual rule:

> (1) whether the litigation involves matters that are highly sensitive and of a
> personal nature; (2) whether identification poses a risk of retaliatory physical or
> mental harm to the party seeking to proceed anonymously or even more critically,
> to innocent non-parties; (3) whether identification presents other harms and the
> likely severity of those harms, including whether the injury litigated against
> would be incurred as a result of the disclosure of the plaintiff's identity; (4)
> whether the plaintiff is particularly vulnerable to the possible harms of disclosure,
> particularly in light of his age; (5) whether the suit is challenging the actions of
> the government or that of private parties; (6) whether the defendant is prejudiced
> by allowing the plaintiff to press his claims anonymously, whether the nature of
> that prejudice (if any) differs at any particular stage of the litigation, and whether
> any prejudice can be mitigated by the district court; (7) whether the plaintiff's
> identity has thus far been kept confidential; (8) whether the public's interest in the
> litigation is furthered by requiring the plaintiff to disclose his identity; (9)
> whether, because of the purely legal nature of the issues presented or otherwise,
> there is an atypically weak public interest in knowing the litigants' identities; and
> (10) whether there are any alternative mechanisms for protecting the
> confidentiality of the plaintiff.

*Id.* at 189–90 (ellipsis omitted).

The burden is squarely on the party seeking to proceed secretly. As the Second Circuit noted just last year, "pseudonyms are the exception and not the rule, and in order to receive the protections of anonymity, a party must make a case rebutting that presumption." *United States v. Pilcher*, 950 F.3d 39, 45 (2d Cir. 2020) (per curiam); *see also Doe v. Fedcap Rehab. Servs., Inc.*, 17-CV-8220 (JPO), 2018 WL 2021588, at *3 (S.D.N.Y. Apr. 27, 2018) ("At the end of the day, Plaintiff has to overcome the strong default rule that parties must proceed under their real names."). Moreover, the party seeking to proceed secretly bears the burden on each of the individual factors noted above. When a plaintiff "has not sufficiently shown that a factor weighs in favor of proceeding anonymously," courts should "deem that factor as weighing against him." *Roe v. Does 1-11*, 20-CV-3788-MKB-SJB, 2020 WL 6152174, at *2 (E.D.N.Y. Oct. 14, 2020).

Ultimately, "[a] party may proceed anonymously only after demonstrating a substantial privacy right which outweighs the customary and constitutionally embedded presumption of openness in judicial proceedings." *Paychex*, 2020 WL 219377, at *4; *see also Rapp v. Fowler*, --- F. Supp. 3d ----, 2021 WL 1738349, at *3 (S.D.N.Y. May 3, 2021) ("District courts have discretion to grant an exception to Rule 10(a) only where the litigant seeking to proceed anonymously has a substantial privacy interest that outweighs any prejudice to the opposing party and 'the customary and constitutionally-embedded presumption of openness in judicial proceedings.'" (quoting *Sealed Plaintiff*, 537 F.3d at 189)). Doing so is no easy task. "While the federal courts have permitted exceptions to the requirement that a plaintiff's identity be disclosed, so as to protect significant privacy interests or to protect a party from physical harm, it is still the exceptional case in which a plaintiff will be permitted to proceed under a pseudonym." *Wheeler-Whichard v. Doe*, No. 10-CV-0358S, 2010 WL 3395288, at *6 (W.D.N.Y. Aug. 25,

7

2010); *see also Doe v. NYSARC Tr. Serv., Inc.*, No. 1:20-CV-801 (BKS/CFH), 2020 WL

5757478, at *7 (N.D.N.Y. Sept. 28, 2020) (referring to the "rare privilege of proceeding in [an]

action using a pseudonym"), *report and recommendation adopted*, 2020 WL 7040982 (Dec. 1,

2020).

### B.    Plaintiffs Have Not Shown They Should Be Allowed to Litigate Pseudonymously

Plaintiffs have not rebutted the presumption against proceeding pseudonymously, as they

have not demonstrated "a substantial privacy right which outweighs the customary and

constitutionally embedded presumption of openness in judicial proceedings." *See Paychex*, 2020

WL 219377, at *4.  They hardly even try: Out of the ten *Sealed Plaintiffs* factors, they address

only three.  *See* Mot. 3–5 (referencing only the first three *Sealed Plaintiff* factors). The seven

factors they do not address weigh against their motion from the outset. *See Roe*, 2020 WL

6152174, at *2 (explaining that when a plaintiff "has not sufficiently shown that a factor weighs

in favor of proceeding anonymously," a court should "deem that factor as weighing against

him"). The three factors they address also weigh in favor of openness. Whatever the calculus,

this is not "the exceptional case in which a plaintiff will be permitted to proceed under a

pseudonym." *See Wheeler-Whichard*, 2010 WL 3395288, at *6.

### 1.    This Action Does Not Involve Highly Sensitive Matters

Every one of the six cases cited by Plaintiffs in their argument that the claims in this case

are highly sensitive and of a personal nature, Mot. 3-4, involve children, sexual behavior, or both

children and sexual behavior. That is not surprising, as "[c]ourts have permitted cases to proceed

anonymously where they involve claims relating to sexual misconduct, highly personal medical

decisions and procedures, such as abortion, or minors." *Paychex*, 2020 WL 219377, at *9; *cf.*

*Doe v. Skyline Autos. Inc.*, 375 F. Supp. 3d 401, 405 (S.D.N.Y. 2019) (explaining that "cases

relating to birth control, abortion, homosexuality, welfare rights of illegitimate children, and

abandoned families are highly sensitive and of a personal nature," but that "the potential for embarrassment or public humiliation does not, without more, justify a request for anonymity."). But this case does not involve children or sexual behavior. None of Plaintiffs' claims come close to the sensitivity of those topics. Plaintiffs assert much less sensitive claims: that Defendants falsely repeated that Plaintiffs had attended parties at a professor's house, unfairly questioned their candor, and violated a law school handbook provision.

Claims like Plaintiffs' do not proceed pseudonymously. In *Doe v. National Conference of Bar Examiners*, 1:16-CV-264 (PKC), 2017 WL 74715 (E.D.N.Y. Jan. 6, 2017), for example, the plaintiff alleged that the National Conference of Bar Examiners and two of its employees refused to process her character and fitness report for admission to the D.C. bar, *id.* at *1–2. She sought to litigate pseudonymously, arguing that if her name were disclosed, the suit could cause her "to be blackballed nationally and internationally." *Id.* at *3. The court rejected this "unsupported accusation," reasoning that her "interest in not being blackballed nationally and internationally in the legal profession does not compare with the serious interests that courts have found to justify permitting a plaintiff to proceed anonymously, such as risks of physical harm or unjustified invasions of privacy or public embarrassment." *Id.* The court denied her request to proceed pseudonymously "because she fail[ed] to demonstrate *any* valid interest in preserving her anonymity, let alone that the balancing of the parties' and public's interest tilt[ed] in her favor." *Id.* (emphasis in original).

It is telling that Plaintiffs lead not only with irrelevant cases involving sexual behavior and minors, but with a New York state trial court case not bound by the federal standard. Even that case, while finding that highly sensitive matters can include "social stigmatization," concerns sexual assault. *See Doe v. NYU*, 786 N.Y.S.2d 892, 903 (N.Y. Sup. Ct. 2004). And

even in New York—where Plaintiffs' counsel practices—that case protects the victims of sexual

misconduct, not all those who allege some broad risk of "social stigmatization." *See Doe v.*

*Zinsou*, 19 Civ. 7025 (ER), 2019 WL 3564582 at *1, *3–4 (S.D.N.Y. Aug. 6, 2019) (finding that

even a plaintiff seeking to litigate human trafficking and forced labor claims pseudonymously

could not rely on *Doe v. NYU* because "that case involved plaintiffs who were alleged victims of

sexual assault" and the plaintiff in *Zinsou* did not allege "tortious conduct of a sexual nature.");

*see also Abdel-Razeq v. Alvarez & Marsal, Inc.*, No. 14 Civ. 5601(HBP), 2015 WL 7017431, at

*4 (S.D.N.Y. Nov. 12, 2015) (rejecting a joint application to redact a party's name or replace the

name with a pseudonym and noting *Doe v. NYU* was inapposite, explaining while "[t]he parties

cite *Doe* . . . for the proposition that the danger of social stigmatization is a substantial privacy

interest that outweighs the public's interest in disclosure," that case "involved plaintiffs who

were victims of sexual assault, suffered emotional distress, and had undergone psychotherapy,"

and "[g]iven the sensitive nature of the conduct at issue in *Doe*, the privacy considerations

implicated in that case are not present in this [sexual harassment, racial discrimination, and

retaliation] case").

The first factor weighs against pseudonymity.

### 2.    Identifying Plaintiffs Would Not Subject Anyone to Retaliatory Physical or Mental Harm

Plaintiffs present no evidence that identifying them would expose themselves or non-

parties to retaliatory physical or mental harm. In analyzing this factor, courts appropriately

consider threats of physical and mental harm, not "embarrassment or economic injury." *See Roe*,

2020 WL 6152174, at *2 (citing *Doe v. Solera Capital LLC*, 18 Civ. 1769 (ER), 2019 WL

1437520, at *4 (S.D.N.Y. Mar. 31, 2019) ("In contrast to evidence of actual physical harm,

courts have found that evidence of embarrassment, social stigmatization, and economic harm

10

provides an insufficient basis for proceeding anonymously."), *vacated on other grounds*, 2020 WL 11027792 (S.D.N.Y. Dec. 16, 2020)). Claims of physical or mental harm cannot be speculative. *See Skyline Autos.*, 375 F. Supp. 3d at 406. Moreover, when a defendant already knows a plaintiff's identity, the factor plainly "weighs against granting a motion to proceed anonymously." *Id*.

Plaintiffs offer no evidence that "a risk of retaliatory physical or mental harm" would flow from proceeding under their own names. *See N. Jersey Media Grp. Inc. v. Doe Nos. 1-5*, No. 12 Civ. 6152(VM) (KNF), 2012 WL 5899331, at *6 (S.D.N.Y. Nov. 26, 2012). Nor have they provided any evidence that they or non-parties will suffer physical or mental harm if their identities are disclosed here. This is not surprising, as Defendants already know who Plaintiffs are: Plaintiffs admit they provided Defendants a draft complaint with their real names before this lawsuit was filed. *See* Mot. 1. As one court recently noted, a plaintiff's claim that the second *Sealed Plaintiff* factor weighs in her favor because there is a risk that the defendants would "retaliat[e] against her by, for example, providing negative references to her prospective employers" falls flat "where, as here, the defendants already know the plaintiff's identity." *Doe v. Freydin*, 21 Civ. 8371 (NRB), 2021 WL 4991731, at *2 (S.D.N.Y. Oct. 27, 2021); *see also Skyline Autos.*, 375 F. Supp. 3d at 406 ("[P]rior knowledge of a plaintiff's identity by the defendants weighs against granting a motion to proceed anonymously.").

Plaintiffs point to their (false) allegations of pre-suit retaliatory conduct against them, *see* Mot. 5, but that does not help them prove that physical or mental retaliation would result from the public disclosure of their identities in this suit, *see N. Jersey Media Grp.*, 2012 WL 5899331, at *6. Simply put, "Plaintiff's argument makes no sense.  Plaintiff concedes . . . that Defendants

already know his identity. . . . Thus, continued anonymity will not serve to protect him from any retaliatory conduct directed by Defendants . . . ." *See Zinsou*, 2019 WL 3564582, at *5.

This factor also weighs against pseudonymity.

### 3. Identifying Plaintiffs Would Not Prevent Other Harms

This factor does not weigh in favor of pseudonymity for largely the same reasons as the preceding factor. These two factors are similar enough that courts often analyze them together. *See, e.g.*, *Rapp*, 2021 WL 1738349, at *5; *cf. Skyline Autos.*, 375 F. Supp. 3d at 406 (analyzing the two factors under the same heading). Courts "have consistently rejected anonymity requests predicated on harm to a party's reputational or economic interests," *Abdel-Razeq*, 2015 WL 7017431, at *4 (collecting cases). Whatever kind of harm is alleged, it cannot be speculative. *See id.*; *Freydin*, 2021 WL 4991731, at *2 ("[T]o justify the exceptional relief of proceeding anonymously, plaintiff must establish with sufficient specificity the incremental injury that would result from disclosure of her identity.").

Plaintiffs fail to show that suing under their real names would harm them. They contend that Defendants have defamed them with false statements and that using their names in the lawsuit would spread those false statements further. *See* Mot. 5. That contention suffers from several flaws. First, it is overinclusive; under its logic, every lawsuit containing a defamation count could be brought pseudonymously. Yet *none* of the cases they cite allows a plaintiff bringing a defamation claim to proceed pseudonymously. Second, an alleged reputational injury does not satisfy this factor. *See Abdel-Razeq*, 2015 WL 7017431, at *4 ("[C]ourts have consistently rejected anonymity requests predicated on harm to a party's reputational or economic interests.") (collecting cases). Third, Plaintiffs filed this suit supposedly to *clear* their names (and collect money): if their factual and legal allegations are ultimately found true, they

will enjoy a benefit, not suffer a harm—and if their allegations are ultimately discredited, then

the harm they will suffer is the harm that every losing litigant suffers.

*Rives v. SUNY Downstate College of Medicine*, 20-cv-621 (RPK) (SMG), 2020 WL

4481641 (E.D.N.Y. Aug. 4, 2020) is instructive. There, a former medical student sued his former

medical school and some faculty members and administrators under federal anti-discrimination

statutes and moved to proceed pseudonymously. *Id.* at 1. He argued that he would "suffer

irreparable harm in his application to residency programs were his name to be publicly

associated with litigation against a medical school." *Id.* at *3. But the court found this contention

speculative, explaining that "plaintiff has not provided support for his contention that residency

programs would retaliate against him for filing even a meritorious lawsuit."  *Id.*

Plaintiffs' reputational and professional injury also resembles the injury alleged in *Roe*.

There, the plaintiff, "an executive coach, consultant, entrepreneur, and non-profit director,"

alleged the defendants anonymously contacted organizations he was involved with, telling them

that he had committed sexual harassment and other wrongs. *Roe*, 2020 WL 6152174, at *1. He

brought defamation, tortious interference with prospective economic advantage, and intentional

infliction of emotional distress claims, *id.* at *1, and in arguing he should be allowed to litigate

pseudonymously, contended that "denying anonymity would amplify the substantial

embarrassment, tarnished professional reputation, and professional and monetary losses" he had

already faced, *id.* at *3 (ellipsis omitted).  The court rejected this "conclusory statement" as

"little more than speculation," because the plaintiff hadn't provided "details or specifics." *Id.*

The court noted that the defendants had allegedly used "Plaintiff's actual name with the third

parties, and Plaintiff has not explained the nature of any additional harm beyond what he is

already suffering if forced to use his actual name in litigation."  *Id.*

Like the first two factors, this factor militates against Plaintiffs proceeding pseudonymously.

### 4.      Plaintiffs Are Not "Particularly Vulnerable" to the Possible Harms of Disclosure

Because they are adults, Plaintiffs are not "particularly vulnerable" to the harms they claim will befall them—purported harms that, as noted above, do not even qualify them for pseudonymity in the courts—if they are identified by name. In considering the fourth factor, "[t]he plaintiff's age is a critical factor . . . as courts have been readier to protect the privacy interest of minors in legal proceedings than of adults." *Rapp,* 2021 WL 1738349, at *6. "If a plaintiff is not a child, this factor weighs against a finding for anonymity." *Id*. Because Plaintiffs did not raise this factor, it weighs against them anyway, *Roe*, 2020 WL 6152174, at *2, but even if they had raised it, their status as adults makes this factor weigh strongly in favor of disclosure.

### 5.      This Case Challenges the Actions of Private Parties

"A suit between private parties counsels against allowing a party to proceed under a pseudonym because private civil suits create strong interests in open proceedings given that such suits implicate legal and social norms." *Roe*, 2020 WL 6152174, at *3. Because Plaintiffs did not raise this factor, it weighs against them. *See id.* at *2. But even if they had raised it, this factor weighs heavily against Plaintiffs because all of the parties are private.

### 6.      Defendants Will Be Prejudiced If Plaintiffs Proceed Pseudonymously

When considering the sixth factor, "courts have examined difficulties in conducting discovery, the reputational damage to defendants, and the fundamental fairness of proceeding anonymously," *Freydin*, 2021 WL 4991731, at *3, as well as settlement leverage, *e.g.*, *Fedcap Rehab. Servs.*, 2018 WL 2021588, at *3.  If this Court lets Plaintiffs litigate pseudonymously, Defendants would be prejudiced in all of these respects.

14

First, Defendants "would be prejudiced during discovery" because the use of a pseudonym makes it more difficult for people with information about plaintiffs or their allegations to come forward. *Rapp*, 2021 WL 1738349, at *7; *see also Doe v. Del Dio*, 241 F.R.D. 154, 159 (S.D.N.Y. 2006) ("[C]oncealing the name of a party could deprive a litigant and the court of the chance that a yet unknown witness would, upon learning that fact about the case, know to step forward with valuable information about the events or the credibility of witnesses."); *Roe*, 2020 WL 6152174, at *3 ("Allowing a plaintiff to proceed anonymously may also hamper witnesses coming forward of their own volition to either bolster or refute a plaintiff's allegations."). Indeed, "[h]ighly publicized cases" such as this one[5] "can cause unknown witnesses to surface" and by keeping Plaintiffs' identities confidential, "information about only one side may thus come to light," which "not only would prejudice [Defendants], but

---

[5] A simple Google search will reveal how much attention this lawsuit has garnered among both mainstream reporters and bloggers. *See, e.g.*, Karen Sloan, *Yale Law Students 'Blackballed' for Refusing to Lie About Professor, Lawsuit Says*, Reuters (Nov. 16, 2021, 1:57 PM), www.reuters.com/legal/legalindustry/yale-law-students-blackballed-refusing-lie-about-professor-lawsuit-says-2021-11-16/; Eugene Volokh, *The Allegations in the New Lawsuit Against Yale Law School*, Reason: The Volokh Conspiracy (Nov. 16, 2021, 10:09 AM), https://reason.com/volokh/2021/11/16/the-allegations-in-the-new-lawsuit-against-yale-law-school/. A Google search with just the words "Balestriere" and "Yale Law School" will also review how frequently Plaintiff's counsel offers reporters and bloggers on-the-record quotes about the case.

Courts appropriately look to evidence beyond the complaint in considering motions to proceed pseudonymously. *See, e.g.*, *Doe v. Weinstein*, 484 F. Supp. 3d 90, 95 (S.D.N.Y. 2020) ("Without corroboration from medical professionals . . . [the plaintiff's] general allegation of potential trauma is 'mere speculation' about a risk of psychological injury that cannot support her motion to proceed under a pseudonym[.]"); *Rapp*, 2021 WL 1738349, at *5–6 (considering declarations from doctors when analyzing certain *Sealed Plaintiff* factors); *see also Doe v. City Univ. of N.Y.*, 21 Civ. 9544 (NRB), 2021 WL 5644642, at *4 (S.D.N.Y. Dec. 1, 2021) (finding the plaintiff's citation of "the risk of 'ostracization and emotional harm,'" absent "evidence of the specific harm that he would be subject to if his name were disclosed," did not satisfy the second and third *Sealed Plaintiff* factors (collecting cases)). Moreover, the Court may take judicial notice of these publicly available press reports. *See Rivas v. Fischer*, 780 F.3d 529, 535 n.4 (2d Cir. 2015) ("We take judicial notice of the fact that press coverage contained certain information, without regard to the truth of its contents." (emphasis omitted)).

would hinder the judicial interest in accurate fact-finding and fair adjudication." *Rapp*, 2021 WL 1738349, at *7. "[T]his asymmetry in fact-gathering would not be avoided by the fact that [Plaintiffs have] already provided [Defendants] with [their names]." *Id.*

Second, Defendants would be prejudiced by Plaintiffs litigating pseudonymously during settlement negotiations, if any were to occur. After all, letting plaintiffs proceed anonymously puts "defendants at a genuine disadvantage, particularly when it comes to settlement leverage, as a plaintiff may hold out for a larger settlement when the plaintiff knows that the defendant faces reputational risk not reciprocated by the plaintiff." *Zinsou*, 2019 WL 3564582, at *7.

Third, letting one side proceed anonymously creates a one-sided reputational battle. "[A]llowing Plaintiff[s] to proceed anonymously while Defendants are not granted such protection could cause embarrassment and stigma to Defendants." *See Roe*, 2020 WL 6152174, at *4. Due to the extensive media coverage of the events underlying this litigation,[6] Defendants have been attacked in the media. There is no particular reason to think that those attacks will stop, given the media's interest in the matter and the greater difficulty that reporters have in investigating the allegations of anonymous accusers, as opposed to the very public targets of those accusations. In short, Plaintiffs filed this case, and by bringing it to this Court, they put their credibility at issue. Fairness requires that they stand behind their charges publicly. *See Rapp*, 2021 WL 1738349, at *7.

---

[6] *See, e.g.*, Lizzie Widdicombe, *What is Going On at Yale Law School?*, The New Yorker (June 19, 2021), www.newyorker.com/news/annals-of-education/what-is-going-on-at-yale-law-school; Dahlia Lithwick & Susan Matthews, *Meltdown at Yale Law*, Slate (May 15, 2021, 3:45 PM), www.slate.com/news-and-politics/2021/05/amy-chua-yale-law-school-dinner-parties.html.

This is another factor that Plaintiffs did not address, and as such, it weighs against them. *See Roe*, 2020 WL 6152174, at *2. But even if they had raised it, it would weigh heavily against them for the reasons above.

### 7.    Plaintiffs' Identities Have Not Been Kept Confidential

"A plaintiff's interest in anonymity is weakened where anonymity has already been compromised." *Zinsou*, 2019 WL 3564582, at *6. Here, Plaintiffs acknowledge that Defendants know who they are. And they also allege that another student circulated the so-called "dossier"— which identified them by name—to the entire student body at Yale Law School. *See* Compl. ¶¶ 49, 46. (The Complaint does not allege that any Defendant circulated it to the student body, though the Motion disingenuously suggests otherwise.) In short, Plaintiffs do not claim the "dossier" has not been made public.

To be sure, while Plaintiffs allege that the dossier was widely circulated, and while this litigation and the events underlying it have received significant media coverage, *see, e.g.*, Sloan, *supra*; Widdicombe, *supra*, that media coverage had not disclosed Plaintiffs' names to the general public when they filed their complaint. But even where Plaintiffs' identities had "thus far been kept confidential from the general public, that in itself is not a reason to permit anonymity; it is, at best for . . . [P]laintiff, a neutral fact." *Zinsou*, 2019 WL 3564582, at *6.

In any event, John was already identified to the general public in the press, and the Complaint acknowledges that. The Complaint asserts that John "struggled with what he felt was a lack of institutional support for students of color, which ended with his frustrated resignation from the board of the Yale Law Journal. His resignation received media coverage including on the popular legal blog (particularly among law students) Above the Law." Compl. ¶ 37. That media coverage included reports in many outlets that offer critical coverage of Yale Law School

and the Defendants, including *The Washington Free Beacon*.[7] Citing John's resignation in

paragraph 37 was tantamount to identifying him, and Plaintiffs' willingness to take that risk

when it suited their purposes is a separate reason why the Court should not now honor their

request for anonymity. Unsurprisingly, reporters, armed with the information provided by

Plaintiffs themselves in Paragraph 37 and elsewhere in the Complaint, have uncovered the real

names of "John Doe" and "Jane Doe."[8]

Accordingly, this factor weighs heavily against Plaintiffs' efforts to maintain the fiction

of pseudonymity when it is widely known who they are.

### 8.    Having Plaintiffs Disclose Their Identities Would Further the Public's Interest in this Case

The eighth factor "relates to the general presumption that parties' identities are public

information," a presumption Plaintiff must overcome.  *See A.B. v. C.D.*, 2:17-cv-5840

(DRH)(AYS), 2018 WL 1935999, at *3 (E.D.N.Y. Apr. 24, 2018) (finding this factor weighed

against a plaintiff who had not presented "any evidence to overcome" the presumption).  "Private

civil suits . . . do not only advance the parties' private interests, but also further the public's

interest in enforcing legal and social norms," *Delta Airlines*, 310 F.R.D. at 224, and "transparent

---

[7] Aaron Sibarium, *Yale Law Students Said a Top Journal Was Racist. Admissions Data Suggest Otherwise.*, Wash. Free Beacon (Feb. 21, 2021, 4:30 PM), https://freebeacon.com/campus/yale-law-students-said-a-top-journal-was-racist-admissions-data-suggest-otherwise/; *see also* Paul Mirengoff, *The War on Standards, Yale Law Journal Edition*, Clarion News: PowerLine Blog (Feb. 21, 2021), https://clarion.causeaction.com/2021/02/21/the-war-on-standards-yale-law-journal-edition/.

[8] *See supra* n.3. The Yale Daily News is a Section 501(c)(3) entity separate from Yale University, exercising full financial and editorial independence. It regularly criticizes the university administration. *See, e.g.,* Brandon Wu, *School of Public Health Faculty and Students Call for Vision and Autonomy Ahead of Dean's Departure*, Yale Daily News (Dec. 3, 2021, 2:57 AM), https://yaledailynews.com/blog/2021/12/03/school-of-public-health-faculty-and-students-call-for-vision-and-autonomy-ahead-of-deans-departure/ ((reporting that the Dean of the Yale School of Public Health was "pushed out" by university administration and reporting third-party criticism of the status and vision of the school).

proceedings foster public confidence in the integrity of the judiciary and serve to demonstrate to the public that the laws are being enforced evenhandedly," *Abdel-Razeq*, 2015 WL 7017431, at *7.

Plaintiffs make no effort to overcome this presumption.  Nor could they, as there is a strong, demonstrated public interest in this dispute. Indeed, both this litigation, *e.g.*, Sloan, *supra*; Volokh, *supra*, and its underlying events have already received significant media attention: "Dinner Party-gate" has become national news, *see, e.g.*, Sarah Lyall & Stephanie Saul, *Gripped by 'Dinner Party-gate,' Yale Law Confronts a Venomous Divide*, N.Y. Times (June 7, 2021), www.nytimes.com/2021/06/07/us/amy-chua-yale-law.html (discussing the backdrop of this case, which "has been adjudicated all over social media and picked up in outlets ranging from The Chronicle of Higher Education to Fox News"). As one well-known blogger stated, citing another blogger: "[I]n case the significance of this is still unclear, this is not only the lesson being taught to the future lawyers of America, but to the future holders of high office who will be positioned to make decisions that will affect a nation and its citizens." David Lat, *The Yale Law School Scandals: Dean Heather Gerken Speaks*, Original Jurisdiction (Nov. 18, 2021), https://davidlat.substack.com/p/the-yale-law-school-scandals-dean. Defendants reject many of the narratives and opinions related in these stories, but the stories unquestionably reflect the public interest in this case—a public interest that militates strongly in favor of Plaintiffs proceeding transparently, not under fake names.

The public interest in disclosure therefore "far outweigh[s] Plaintiff[s'] interest in not suffering professional embarrassment and any concomitant financial harm." *See Doe v. Delta Airlines Inc.,* 672 F. App'x 48 (2d Cir. Nov. 29, 2016) (agreeing with district court that "the public interest in scrutinizing judicial proceedings combined with the prejudice [the defendant]

19

would face from defending against claims prosecuted by an anonymous person at trial far outweigh [the plaintiff's] interest in not suffering professional embarrassment and any concomitant financial harm").

9. **The Public's Interest in Knowing Plaintiffs' Identities Is Not "Atypically Weak"**

"[T]he ninth factor suggests that if the issues presented are purely legal in nature, generally there is an atypically weak public interest in knowing" the parties names. *Skyline Autos.*, 375 F. Supp. 3d at 408. When a case involves "particular actions and incidents" rather than "abstract public policies," open proceedings benefit the public as well as the parties and also serve the judicial interest in accurate fact-finding and fair adjudication." *Id.* Plaintiffs' allegations concern "specific, fact-based incidents" involving "specific wrongdoings of private parties," such as the alleged efforts of Gerken and Cosgrove to convince a faculty member not to hire Plaintiffs as Coker Fellows. *See, e.g.*, Compl. ¶ 78. As such, the public interest in favor of disclosure is not "atypically weak."  *See Solera Capital LLC*, 2019 WL 1437520, at *8 (denying a motion to proceed pseudonymously in a case concerning, among other claims, retaliation, in part because the plaintiff's "claims concern[ed] specific, fact-based incidents"). More broadly, the volume of media attention to this case—described both in the Complaint and above—makes plain that the public interest in disclosure is not "atypically weak."

10. **Alternative Mechanisms Exist to Provide Any Needed Protection for Plaintiffs**

For the reasons stated above, there is no reason to think that Plaintiffs have any right to proceed anonymously. But if particularly sensitive issues arose in the course of this litigation, then those issues could be handled the way that parties always protect sensitive material when appropriate: through redaction, sealing, protective orders, or confidentiality agreements. *See Skyline Autos.*, 375 F. Supp. 3d at 408. Any issues regarding documents containing particularly

20

sensitive information can be dealt with if and when they arise; such speculative possibilities provide no justification for proceeding pseudonymously. *See Anonymous v. Medco Health Sols., Inc.*, 588 F. App'x 34, 35 (2d Cir. Dec. 16, 2014) (affirming district court denial of plaintiff's request to proceed pseudonymously, noting "any issues regarding the confidentiality of particular documents or the need for redaction will be handled as they arise").

*   *   *

The relevant factors weigh heavily against letting Plaintiffs hide behind false names. Plaintiffs do not come close to "demonstrating a substantial privacy right which outweighs the customary and constitutionally embedded presumption of openness in judicial proceedings." *See Paychex*, 2020 WL 219377, at *4. They have not rebutted the presumption that parties to a lawsuit must identify themselves. They offer no reason to depart from the plain text of Rule 10(a). This Court should honor the public's "right to know who is using their courts." *Sealed Plaintiff*, 537 F.3d at 189.

## CONCLUSION

Plaintiffs' motion for a protective order should be denied.

**DEFENDANT YALE UNIVERSITY**

*/s/ Jonathan Freiman*
Jonathan M. Freiman (ct24248)
Paul A. Tuchmann (ct8018)
Wiggin and Dana LLP
One Century Tower
265 Church Street
PO Box 1832
New Haven, CT 06508-1832
jfreiman@wiggin.com
ptuchmann@wiggin.com
Tel.: (203) 498-4400
Fax: (203) 782-2889

*Counsel for Defendant*