**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| SIERRA STUBBS and GAVIN JACKSON, | |
| Plaintiffs, | CASE NO: 3:21-CV-01525-SALM |
| v. | |
| HEATHER GERKEN, ET AL., | |
| Defendants. | JANUARY 21, 2022 |

**DEFENDANTS' MOTION TO STAY DISCOVERY**
**PENDING RESOLUTION OF ITS ANTICIPATED MOTION TO DISMISS**

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ................................................................................ ii

**INTRODUCTION** ........................................................................................... 1

**LEGAL STANDARD** ..................................................................................... 3

**ARGUMENT** ................................................................................................. 5

    I.     Yale's Motion to Dismiss Will Raise Substantial
            Grounds for Dismissal ............................................................... 5

    II.    The Breadth and Burden of Discovery Weigh in
            Favor of a Stay ......................................................................... 14

    III.   Plaintiffs Would Not be Prejudiced by the Brief Stay .................... 16

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*A-G Foods, Inc. v. Pepperidge Farm, Inc.*,
  579 A.2d 69 (Conn. 1990) ....................................................................................13

*Am. Diamond Exch. v. Alpert*,
  28 A.3d 976 (Conn. 2011) ....................................................................................11

*United States ex rel. Ameti v. Sikorsky Aircraft Corp.*,
  No. 3:14-CV-1223 (VLB), 2016 WL 10490528 (D. Conn. Nov. 28, 2016) ............................5

*Estate of Axelrod v. Flannery*,
  476 F. Supp. 2d 188 (D. Conn. 2007) ........................................................................6

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................5

*Berry v. Zalon*,
  FBTCV165032337, 2018 WL 1749970 (Conn. Super. Ct. Mar. 8, 2018) ...............................9

*Capasso v. Christmann*,
  CV095031331S, 2016 WL 7975806 (Conn. Super. Ct. Dec. 12, 2016)...................................10

*Carrol v. Allstate Ins. Co.*,
  815 A.2d 119 (Conn. 2003) ...................................................................................10

*Cassidy v. Lawson*,
  No. Civ.A. 302CV1688CFD, 2005 WL 2508593 (D. Conn. Sept. 29, 2005) .........................13

*Chambers v. Time Warner, Inc.*,
  282 F.3d 147 (2d Cir. 2002)....................................................................................6

*Clinton v. Jones*,
  520 U.S. 681 (1997)..............................................................................................6

*Colon v. Town of W. Hartford*,
  No. Civ. 3:00CV168 (AHN), 2001 WL 45464 (D. Conn. Jan. 5, 2001) ...............................6

*Country Club of Fairfield, Inc. v. New Hampshire Ins. Co.*,
  No. 3:13-CV-00509 (VLB), 2014 WL 3895923 (D. Conn. Aug. 8, 2014) .............................5

*Crimsale v. Walston*,
  194 A.3d 301 (Conn. App. Ct. 2018)........................................................................13

*Cuartero v. United States*,
  No. 3:05CV1161 (RNC), 2006 WL 3190521 (D. Conn. Nov. 1, 2006)............................5, 16

*Di Terisi v. Stamford Health Sys., Inc.*,
    63 A.3d 1011 (Conn. App. Ct. 2013) ................................................................10

*Dietz v. Bouldin*,
    579 U.S. 40 (2016) .............................................................................................3

*Doe v. Danbury Hosp.*,
    DBDCV195015760S, 2021 WL 402055 (Conn. Super. Ct. Jan. 12, 2021) ...........14

*DSM Desotech Inc. v. 3D Sys. Corp.*,
    No. 08-cv-1531, 2008 WL 4812440 (N.D. Ill. Oct. 28, 2008) ..............................16

*In re First Constitution Shareholders Litig.*,
    145 F.R.D. 291 (D. Conn. 1991) .........................................................................16

*Glatzel v. Brittle*,
    No. DBCV084008461S, 2010 WL 4620975 (Conn. Super. Ct. Oct. 25, 2010) ......9

*Gleason v. Smolinski*,
    319 Conn. 394 (2015) .........................................................................................12

*Goel v. Bunge, Ltd.*,
    820 F.3d 554 (2d Cir. 2016) .................................................................................6

*Hi-Ho Tower, Inc. v. Com-Tronics, Inc.*,
    761 A.2d 1268 (Conn. 2000) ..............................................................................10

*Holcombe v. Ingredients Solutions, Inc.*,
    No. 17-cv-01090 (SRU), ECF #23 (D. Conn. Dec. 11, 2017) ...............................4

*ITT Corp. v. Travelers Cas. & Surety Co.*,
    No. 3:12-cv-38 (RNC), 2012 WL 2944357 (D. Conn. July 18, 2012) .........3, 4, 5, 14

*Johnson v. Schmitz*,
    119 F. Supp. 2d 90 (D. Conn. 2000) ...................................................................13

*Kalra v. Adler Pollock & Sheehan, P.C.*,
    3:20-cv-1393, ECF #28 (Mar. 18, 2021) (attached as Ex. A) ...........................4, 5

*Kalra v. Adler Pollock & Sheehan, P.C.*,
    3:18-CV-00260 (KAD), (D. Conn. Jan. 25, 2021) (attached as Ex. B) .................14

*Lee v. Yale Univ.*,
    Case No. <u>3:21-cv-00389-SALM</u>, Dkt. # 39 .......................................................4

*Lee v. Yale Univ.*,
    No. <u>3:21-cv-00389-SALM</u>, Dkt. # 26 ..................................................................4

*Levin v. McPhee*,
   119 F.3d 189 (2d Cir. 1997)...................................................................13

*Louis Vuitton Malletier S.A. v. LY USA, Inc.*,
   676 F.3d 83 (2d Cir. 2012)................................................................3, 14

*Maselli v. Reg'l Sch. Dist. No. 10*,
   235 A.3d 599 (Conn. App. Ct. 2020).....................................................10

*Miller Auto. Corp. v. Jaguar Land Rover N. Am.*,
   No. 3:09-CV-1291 EBB, 2010 WL 3260028 (D. Conn. Aug. 12, 2010) ...................8

*NetScout Sys., Inc. v. Gartner, Inc.*,
   223 A.3d 37 (Conn. 2020) ......................................................................12

*Nowacki v. Town of New Canaan*,
   No. 3:16-CV-00407 (JAM), 2017 WL 11441480 (D. Conn. Jan. 5, 2017).........3, 5

*Perez-Dickson v. City of Bridgeport*,
   43 A.3d 69 (Conn. 2012) .......................................................................10

*Pro Music Rights, LLC v. Apple Inc.*,
   3:20-cv-00309, ECF #164 (D. Conn. Sept. 2, 2020) ...............................10

*Rodriguez v. Am. Friends of the Hebrew Univ., Inc.*,
   No. 96 Civ. 240(JGK), 1998 WL 146227 (S.D.N.Y. Mar. 25, 1998) ..................13

*Saliga v. Chemtura Corp.*,
   No. 12-cv-832 (VAB), 2015 WL 5822589 (D. Conn Oct. 1, 2015).......................10

*Sanchez v. Homestead Funding Corp. et al*,
   3:13-cv-01850, ECF #30 (D. Conn. May 5, 2014) ...................................4

*Summerhill, LLC v. City of Meriden*,
   No. CV106002388S, 2012 WL 1004298 (Conn. Super. Ct. Mar. 5, 2012)...........11

*Trahan v. Lazar*,
   457 F. Supp. 3d 323 (S.D.N.Y. 2020) ("extrinsic documents may be
   considered as part of the pleadings if they either are (1) attached to the
   complaint; (2) incorporated into the complaint by reference; or (3) integral to
   the complaint").......................................................................................6

*Watkins v. City of Waterbury Bd. of Educ.*,
   3:19-CV-00593, 2020 WL 1184783 (D. Conn. Mar. 11, 2020) ...............9

**INTRODUCTION**

Yale Law School ("YLS") students Sierra Stubbs and Gavin Jackson have sued YLS officials Heather Gerken, Ellen Cosgrove, and Yaseen Eldik, as well as Yale University, over harms Plaintiffs allegedly suffered after another YLS student distributed a document (melodramatically called a "dossier") that circulated throughout YLS and was reported on by the national media and legal blogosphere. The "dossier" purportedly chronicles meetings that Plaintiffs had with a YLS professor, Amy Chua, in contravention of restrictions that she had agreed upon with YLS. Plaintiffs allege that when they complained to Cosgrove and Eldik about the third student's compilation and dissemination of the document, they were pressured to confirm that the allegations about Chua in the document were true.  *See* Sec. Am. Compl. ("SAC") ¶¶ 54-55.  Plaintiffs further allege that Cosgrove and Eldik warned them about professional repercussions for not confirming the document's allegations, and that Cosgrove and Gerken shared a marked-up version of the widely-disseminated document with a professor (the "Professor") who was considering hiring them as teaching assistants, discouraging him from hiring them. *Id.* ¶¶ 59–60, 70–72. They claim they "lost" the teaching assistant jobs as a result. *Id.* ¶ 97.[1]

Plaintiffs allege that this alleged course of events supports seven causes of action: (1) a breach of contract claim based on a non-retaliation policy in a university handbook (the

---

[1] Public press accounts relate that Plaintiffs' lead counsel has backtracked on his claims, acknowledging that at least one of the Plaintiffs received an offer to serve as a teaching assistant but declined to do so and instead chose to take a leave of absence. *See* Law student received Coker fellowship, undermining case against Law School - Yale Daily News (Attorney John "Balestriere explained that the damages do not refer simply to the awarding of the [teaching assistant position], but rather to the fact that his client took a leave of absence from the Law School as a result of this incident — and therefore did not undertake the fellowship.").

"Handbook"), *id.* ¶¶ 84–88; (2) a promissory estoppel claim regarding the same alleged

retaliation, *id.* ¶¶ 89–92; (3) an intentional interference with prospective business relationship

claim, alleging that their potential employment with all YLS professors and all U.S. judges has

been undermined, *id.* ¶¶ 93–97; (4) a defamation claim (based partly on Gerken and Cosgrove

sharing the widely-available document with a single professor, and partly on an uninvolved YLS

professor describing the lawsuit as frivolous after seeing media reports about it), *id.* ¶¶ 98–106;

(5) an unreasonable publicity claim arising from sharing the document with the Professor, *id.* ¶¶

107–110; (6) a false light claim based on the same meeting with the one Professor, *id.* ¶¶ 111–

14; and (7) an intentional infliction of emotional distress ("IIED") claim, *id.* ¶¶ 115–19.

On January 19, 2022, Plaintiffs filed their Second Amended Complaint (Dkt. #30), and

several hours later the parties filed their Joint Report of their Rule 26(f) Planning Meeting (Dkt.

#31). That Joint Report outlines nearly a year of anticipated discovery, ranging from written

discovery including the production of emails, text messages and phone location data, the

depositions of up to twenty fact witness, and expert reports and depositions, among other things.

Dkt. #31 at 6-9. Absent a stay, discovery will begin February 14, 2022 and end on January 23,

2023 per the Scheduling Order the Court issued after the report was filed. Dkt. #32.

Defendants now move to stay discovery until the resolution of their motion to dismiss,

which is due on February 14, 2022. Each of the three relevant factors supports a stay. First, while

a stay does not require the Court to predict its ultimate resolution of the motion to dismiss, the

arguments in favor of dismissal are at a minimum substantial and well founded. Second, a stay

would preserve resources, particularly where, as here, discovery would require substantial

document production and numerous depositions, and would involve counsel with a history of

discovery misconduct requiring court intervention. Third, a short stay of discovery would not

prejudice Plaintiffs. Defendants have preserved relevant documents and are prepared to begin discovery quickly and complete it promptly if the motion to dismiss is denied. The Court should thus pause discovery in this much-watched case until it determines whether the Plaintiffs have pleaded cognizable claims in their Second Amended Complaint.

## LEGAL STANDARD

District courts have "considerable discretion" under Rule 26(c) of the Federal Rules of Civil Procedure to stay discovery for good cause. *Nowacki v. Town of New Canaan*, No. 3:16-CV-00407 (JAM), 2017 WL 11441480, at *1 (D. Conn. Jan. 5, 2017); *ITT Corp. v. Travelers Cas. & Surety Co.*, No. 3:12-cv-38 (RNC), 2012 WL 2944357, at *2 (D. Conn. July 18, 2012) (stay of discovery under Rule 26(c) "'is committed to the sound discretion of the court based on a showing of good cause.'").[2] The Court also has the inherent authority—and broad discretion—to stay proceedings "to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants." *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 96 (2d Cir. 2012); *accord Clinton v. Jones*, 520 U.S. 681, 706 (1997) ("[T]he District Court has broad discretion to stay proceedings as an incident to its power to control its own docket."); *see also Dietz v. Bouldin*, 579 U.S. 40, 47 (2016) ("[D]istrict courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases.")

While the District of Connecticut Standing Order on Civil Cases notes that filing a motion to dismiss does not *automatically* stay discovery (as it does in some other districts), judges in the District of Connecticut issue discovery stays where appropriate, "to avoid

---

[2] Throughout this brief, emphasis is added and internal quotation marks, internal citations and internal brackets are omitted unless otherwise indicated.

potentially expensive and wasteful discovery during the pendency of a determination which could potentially reshape pending claims." *ITT Corp.*, 2012 WL 2944357, at *2; *see also, e.g., Kalra v. Adler Pollock & Sheehan, P.C.*, 3:20-cv-1393 (KAD), ECF #28 (Mar. 18, 2021) (attached as Ex. A) (staying discovery "pending resolution of Defendants' motion to dismiss"); *Pro Music Rights, LLC v. Apple Inc.*, 3:20-cv-00309 (JAM), ECF #164 (D. Conn. Sept. 2, 2020) (staying discovery pending motion to dismiss where motion raised substantial legal arguments and discovery sought would likely be expansive); *Sanchez v. Homestead Funding Corp. et al*, 3:13-cv-01850 (MPS), ECF #30 (D. Conn. May 5, 2014).  Indeed, in a recent case brought by a former faculty member against Yale that likewise attracted widespread press attention (and which, likewise, some observers speculated was motivated by the desire to attract such press attention), Judge Shea granted a motion to stay discovery pending resolution of a motion to dismiss. *Lee v. Yale Univ.*, No. 3:21-cv-00389-SALM, Dkt. # 26 ("The [21] motion to stay discovery pending the Court's ruling on the motion to dismiss is hereby GRANTED. Should the Court deny the motion to dismiss (in whole or in part), the parties shall file a revised Rule 26(f) Report within 14 days of the Court's ruling.");[3] *see also Holcombe v. Ingredients Solutions, Inc.*, No. 17-cv-01090 (SRU), ECF #23 (D. Conn. Dec. 11, 2017) (staying discovery "until a ruling is made on an anticipated motion to dismiss the amended complaint" or an answer is filed). The motion to dismiss the recently-filed Second Amended Complaint in this case is due on February 14, 2022.

Moreover, the Court's discretion to limit discovery until deciding a motion to dismiss is in accord with precedent construing Rule 12(b)(6)'s pleading standard. In *Bell Atlantic Corp. v.*

---

[3] That case was recently transferred to this Court. *See Lee v. Yale Univ.,* Case No. 3:21-cv-00389-SALM, Dkt. # 39.

*Twombly*, 550 U.S. 544 (2007), the Supreme Court expressed the concern that, without rigorous scrutiny of the viability of a plaintiff's allegations on a Rule 12(b)(6) motion, "a plaintiff with a largely groundless claim [may] be allowed to take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value." *Id.* at 558. By making clear that Rule 12 required a plaintiff to meet a meaningful standard for stating a claim, the Supreme Court "hope[d] to avoid the potentially enormous expense of discovery" in cases that warrant dismissal. *Id.* at 559.

To determine whether a stay of discovery is appropriate when a motion to dismiss is pending, courts consider: (1) whether there are substantial grounds for dismissal raised by the motion; (2) the breadth of discovery sought and the burden of responding to it; and (3) the risk of unfair prejudice to the party opposing the stay. *E.g.*, *Kalra*, 3:20-cv-1393 (KAD), ECF #28; *Pro Music Rights, LLC*, 3:20-cv-00309 (JAM), ECF # 164; *United States ex rel. Ameti v. Sikorsky Aircraft Corp.*, No. 3:14-CV-1223 (VLB), 2016 WL 10490528, at *1-*2 (D. Conn. Nov. 28, 2016); *Country Club of Fairfield, Inc. v. New Hampshire Ins. Co.*, No. 3:13-CV-00509 (VLB), 2014 WL 3895923, at *3 (D. Conn. Aug. 8, 2014); *accord, e.g.*, *Nowacki*, 2017 WL 11441480, at *1; *ITT Corp.*, 2012 WL 2944357, at *2. Here, all three factors weigh in favor of a stay.

## ARGUMENT

### I.  Yale's Motion to Dismiss Will Raise Substantial Grounds for Dismissal.

The Court need not "predict the outcome of [Yale's] motion to dismiss" to grant a stay. A stay of discovery is appropriate where the arguments in favor of dismissal are "substantial and not unfounded in the law." *ITT Corp.*, 2012 WL 2944357, at *3; *accord, e.g.*, *Cuartero v. United States*, No. 3:05CV1161 (RNC), 2006 WL 3190521, at *2 (D. Conn. Nov. 1, 2006). The arguments in the forthcoming motion to dismiss are well-founded and substantial.

Plaintiffs allege Defendants breached a contract to which all Yale University students are parties, the Yale Policy Against Discrimination and Harassment (the "Policy"), by retaliating against them in violation of the Policy's prohibition against retaliation.  *See* SAC ¶¶ 9, 73, 86. Plaintiffs did not attach the Policy to their Amended Complaint, but they incorporate it by reference, *see id.* (naming policy and quoting from it); it is also integral to their very first cause of action (breach of contract). It should thus be treated as part of the complaint. *See, e.g.*, *Trahan v. Lazar*, 457 F. Supp. 3d 323, 341 (S.D.N.Y. 2020) ("extrinsic documents may be considered as part of the pleadings if they either are (1) attached to the complaint; (2) incorporated into the complaint by reference; or (3) integral to the complaint"); *Colon v. Town of W. Hartford*, No. Civ. 3:00CV168 (AHN), 2001 WL 45464, *1 n.1 (D. Conn. Jan. 5, 2001) (even "where a plaintiff does not attach to the complaint or incorporate by reference a document on which it relies," if it "is integral to the complaint, a defendant may introduce that document as part of a motion attacking the pleadings"). *See generally Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (where plaintiff had "actual notice" of the document and "relied upon the document in framing the complaint," it is properly considered part of the complaint). That makes good sense, because in "most instances where this exception is recognized, the incorporated material is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason—usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim—was not attached to the complaint." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016); *see also Estate of Axelrod v. Flannery*, 476 F. Supp. 2d 188, 200 (D. Conn. 2007) ("The primary purpose of this exception is to prevent plaintiffs from generating complaints invulnerable to rule 12(b)(6) simply by clever drafting.").

It is not surprising that Plaintiffs did not attach a copy of the Policy—which is publicly available to them or anyone visiting Yale's website—to their Second Amended Complaint. If they had, it would have been obvious that the Policy has an "effective date" of August 1, 2021 and a "revision date" of January 1, 2022. *See* 9000 Yale University Policy Against Discrimination and Harassment | It's Your Yale (noting both dates). Both dates come *after* the events that Plaintiffs complain of. Plaintiffs' reliance on a Policy that did not exist when they enrolled or when the Defendants' allegedly culpable behavior took place dooms their claims.

Plaintiffs' allegations would not state a claim for breach of contract even if the Policy had been in place at the time of the events they complain of. The Policy text is clear: retaliation is not permitted against members of the Yale community who have "reported a concern, filed a complaint, and/or participated in an investigation *pursuant to this policy*." *Id.* The term "this policy" is clear. It refers to the "Yale University Policy Against Discrimination and Harassment." *Id.* And Discrimination is clearly defined:

> Discrimination means treating an individual adversely in University admissions or in the conduct of educational programs or employment *based on sex, sexual orientation, gender identity or expression, race, color, national or ethnic origin, religion, age, disability, status as a special disabled veteran, veteran of the Vietnam era or other covered veteran, or membership in any other protected classes as set forth in Connecticut and federal law ("protected characteristics").*

*Id.* So is Harassment:

> Harassment means subjecting an individual to objectively offensive, unwelcome conduct *based on any of the protected characteristics*, when such conduct (i) is severe, persistent, or pervasive and (ii) has the purpose or effect of unreasonably interfering with the individual's work, academic performance or participation in university activities or creates an intimidating or hostile environment.  Harassment may be found in a single severe episode, as well as in persistent behavior.  Harassment is evaluated using a "reasonable person" standard.

*Id.* But Plaintiffs do not claim they were retaliated against because they "reported a concern, filed a complaint, and/or participated in an investigation" regarding "protected characteristics." *Id.* They claim (falsely) they were retaliated against because they refused to state that a YLS professor was violating YLS rules. That is not a "protected characteristic[]," so the Policy does not aid them. They allege some sort of generic undefined retaliation, unconnected to "Retaliation" as defined in the Policy. *See e.g.*, SAC ¶¶ 65–66 (complaining of retaliation due to "false rumors spread by other students" and purported "lies and misrepresentations"). In short, Plaintiffs' breach of contract claim has no basis in the language of the alleged contract.

Plaintiffs also bring a promissory estoppel claim, duplicative of their breach of contract claim.  An equitable claim for promissory estoppel can survive only "when there is no written contract." *Miller Auto. Corp. v. Jaguar Land Rover N. Am.*, No. 3:09-CV-1291 EBB, 2010 WL 3260028, at *8 (D. Conn. Aug. 12, 2010). Promissory estoppel "is an action outside the contract" and "[w]hen an enforceable contract does exist, the parties cannot assert a claim for promissory estoppel based on alleged promises that contradict the written contract." *Id.* Plaintiffs' promissory estoppel claim incorporates their allegations about the existence of a valid contract. *See* SAC ¶ 89 (incorporating all prior allegations, including those regarding the existence of a contract). Their promissory estoppel claim cannot contradict the contract they pleaded and rely on. In fact, it merely restates it. The sole factual allegation on which it rests is that "Defendants made a clear and definite promise to Sierra and Gavin that they would not retaliate against them if they ever complained of harassment."  SAC ¶ 90.  But there is no allegation that this "promise" differed from the promise that they say the Policy provided, a contractual promise that carefully defined "retaliation" and "harassment." *See* [9000 Yale University Policy Against Discrimination and Harassment | It's Your Yale](#) (defining terms). Without alleging a separate and distinct

promise not covered in the contract they claim, Plaintiffs' promissory estoppel claim cannot survive.

Plaintiffs also bring unreasonable publicity and false light claims based on an allegation that Defendants Gerken and Cosgrove shared a marked-up version of the student-created document with the Professor.  Plaintiffs' privacy claims fail because (1) they do not allege the document was ever publicized, *see Berry v. Zalon*, FBTCV165032337, 2018 WL 1749970, at *4 (Conn. Super. Ct. Mar. 8, 2018) (quoting Restatement (Second) of Torts § 652D cmt. a) ("[I]t is not an invasion of privacy to communicate a fact concerning the plaintiff's private life to a single person."); (2) the contents of the document were not private when Defendants Gerken and Cosgrove shared a copy with the Professor, *see Glatzel v. Brittle*, No. DBCV084008461S, 2010 WL 4620975, at *2-3 (Conn. Super. Ct. Oct. 25, 2010) (finding "all of the information republished by the defendants . . . was previously made public" and holding the plaintiff failed to plead a claim for unreasonable publicity); and (3) the document contained matters that are of legitimate concern to the public, *see* SAC ¶ 47 ("The Dossier eventually gained such wide circulation that it became the subject of investigative reporting from news outlets including *The New Yorker*, *The New York Times*, and *The Atlantic*.").  Plaintiffs' publicity claims will not survive under Connecticut law.

Plaintiffs' IIED claim will likewise fail. Such a claim requires allegations of Defendants' "extreme and outrageous" conduct and that Plaintiffs suffered "severe" emotional distress. "Whether conduct is sufficient to satisfy the element of extreme and outrageous conduct is a question, in the first instance, for the court."  *Watkins v. City of Waterbury Bd. of Educ.*, 3:19-CV-00593 (KAD), 2020 WL 1184783, at *3 (D. Conn. Mar. 11, 2020).  Extreme and outrageous conduct is rare. "Connecticut courts have been reluctant to allow claims for intentional infliction

of emotional distress . . . and in applying Connecticut law, federal courts in this District have

interpreted the extreme and outrageous requirement strictly." *Saliga v. Chemtura Corp.*, No. 12-

cv-832 (VAB), 2015 WL 5822589, at *21 (D. Conn Oct. 1, 2015); *see also Carrol v. Allstate Ins.

Co.*, 815 A.2d 119, 126 (Conn. 2003); *Di Terisi v. Stamford Health Sys., Inc.*, 63 A.3d 1011,

1020-22 (Conn. App. Ct. 2013). Allegations that a YLS Dean and Associate Dean shared a

marked-up version of a student-created document with a professor because they believed it

showed that Plaintiffs had not been candid, *see* SAC ¶¶ 72, 116, does not constitute extreme and

outrageous conduct under Connecticut law. Nor have Plaintiffs pleaded the sort of "severe"

emotional response Connecticut law requires. *See Perez-Dickson v. City of Bridgeport*, 43 A.3d

69, 101 (Conn. 2012) ("[t]here was no evidence that the plaintiff was in distress for an extended

period or that she sought medical treatment."); *see also Capasso v. Christmann*, CV095031331S,

2016 WL 7975806, at *10 (Conn. Super. Ct. Dec. 12, 2016) (finding the plaintiff did not

establish he sustained severe emotional distress by stating "that he suffered hurt feelings, loss of

sleep, and had trouble sleeping" and "he did not inform his doctors about his sleep problems").

"Emotional distress is unlikely to be considered severe in the absence of treatment, medical,

psychological, or otherwise." *Maselli v. Reg'l Sch. Dist. No. 10*, 235 A.3d 599, 617 (Conn. App.

Ct. 2020).

Plaintiffs' tortious interference claim is likewise baseless. A plaintiff alleging such a

claim must plead and prove "(1) a business relationship between the plaintiff and another party;

(2) the defendant's intentional interference with the business relationship while knowing of the

relationship; and (3) as a result of the interference, the plaintiff suffers actual loss." *See Hi-Ho

Tower, Inc. v. Com-Tronics, Inc.*, 761 A.2d 1268, 1273 (Conn. 2000). Plaintiffs label their

tortious interference claim as one involving "intentional interference with *prospective* business

relationship," SAC at 17, and they plead interference with those "prospective relationships,"
such as clerkships with unnamed judges or unspecified future jobs, *id.* ¶¶ 94-95.  But
Connecticut recognizes claims for interference only with an *existing* business relationship, not a
*prospective* one, *see, e.g.*, *Summerhill, LLC v. City of Meriden*, No. CV106002388S, 2012 WL
1004298, at *2 (Conn. Super. Ct. Mar. 5, 2012) (electing to "look[] past the parenthetical title of"
a claim for interference with "prospective economic gain" and analyzing the claim as one for
"tortious interference with business expectancies"), and Plaintiffs do not come close to alleging a
specific relationship.  Instead, they allege they "had a *prospective* relationship with Yale's
professors and judges' chambers around the country." SAC ¶ 94.

The only existing relationship as to which they allege interference is with the Professor,
but they fail to plausibly allege they suffered any actual loss stemming from Gerken and
Cosgrove's meeting with the Professor.  "Unlike other torts in which liability gives rise to
nominal damages even in the absence of proof of actual loss," "it is an essential element of the
tort of unlawful interference with business relations that the plaintiff suffered actual loss."  *Am.
Diamond Exch. v. Alpert*, 28 A.3d 976, 986 (Conn. 2011). Plaintiffs have not adequately alleged
actual loss caused by the meeting. Their only relevant allegation is that "both [Plaintiffs] lost the
Coker Fellowship" that the Professor supposedly would have offered them. SAC ¶ 97.[4]  The
phrasing is deliberate. They don't allege that they did not receive offers of Coker Fellowships
from a YLS professor. They don't allege that the Professor didn't offer them Coker Fellowships.
*Cf. supra* n.1 (citing press reports noting that Plaintiffs' lead counsel has acknowledged that at

---

[4] Their allegation of supposedly lost clerkships alleges interference with a prospective
relationship, not an existing one. Moreover, they do not allege they had even applied for any
clerkships.

least one Plaintiff received an offer to serve as a Coker Fellow but declined it).[5] The allegation

that they "lost the Coker Fellowship" is a "naked assertion" of actual loss, one unsupported by

any factual averments. *See Twombly*, 550 U.S. at 557. Plaintiffs' actual loss allegations

accordingly fall short.

Plaintiffs' defamation claim also cannot survive.  They base their claim on the sharing of

the "dossier" with a single professor and on Professor Monica Bell's comments that she thought

the lawsuit was frivolous after Plaintiffs filed suit, *See* SAC ¶¶ 99–100. To establish a

defamation claim, a plaintiff must show "(1) the defendant published a defamatory statement; (2)

the defamatory statement identified the plaintiff to a third person; (3) the defamatory statement

was published to a third person; and (4) the plaintiff's reputation suffered injury as a result of the

statement." *Gleason v. Smolinski*, 319 Conn. 394, 430 (2015) (quotation marks and brackets

omitted).  A defamatory statement is "a communication that tends to harm the reputation of

another as to lower him in the estimation of the community or to deter third persons from

associating or dealing with him." *Id*. at 431 (quotation marks omitted).

First, the allegations complain of statements of opinion, not fact. "[A] defendant cannot

be held liable for expressing a mere opinion." *NetScout Sys., Inc. v. Gartner, Inc.*, 223 A.3d 37,

47 (Conn. 2020).  While a factual statement "relates to an event or state of affairs that existed in

the past or present and is capable of being known," an opinion "is a personal comment about

another's conduct, qualifications or character that has some basis in fact." *Id.*  "Whether a

---

[5] Public records show that Plaintiff Sierra Stubbs is currently working at the U.S. Department of
Commerce.  *See* Staff Directory (commerce.gov). Her position is in the Office of the Secretary
(of Commerce). *See* Final Q1 FY 2022-2023 Attach J - Glossary of Acronyms.docx (live.com).
The Secretary of Commerce is Gina Raimondo, a YLS graduate, *see* Gina M. Raimondo | U.S.
Department of Commerce, and former Trustee of Yale Corporation (from 2014-21). *See* Former
Trustees | Yale University. This Court may take judicial notice of the federal executive
department websites.

statement is an assertion of a fact or an assertion of an opinion is a question of law." *Crimsale v. Walston*, 194 A.3d 301, 313 (Conn. App. Ct. 2018).

The SAC alleges that Cosgrove and Gerken shared the marked-up copy of the "dossier" "to show where Cosgrove *believed* that Sierra and Gavin were lying," SAC ¶ 72, and Professor Bell said the Plaintiffs had "improper motivations and intentions," were acting to "cause a stir," and do not "think they can win" SAC ¶¶ 80–82. These evaluative statements constitute opinions. *See, e.g.*, *Johnson v. Schmitz*, 119 F. Supp. 2d 90, 101–02 (D. Conn. 2000) (granting motion to dismiss defamation claims against Yale faculty members and Yale—under a vicarious liability theory—because the challenged statements made during an evaluation of the plaintiff's work, including the statement that plaintiff's "ideas were ridiculous and unoriginal," were "merely expressions of opinion"). Statements about another's motivations cannot form the basis of a defamation claim. *See, e.g.*, *Cassidy v. Lawson*, No. Civ.A. 302CV1688CFD, 2005 WL 2508593, at *3 (D. Conn. Sept. 29, 2005); *see also Levin v. McPhee*, 119 F.3d 189, 197 (2d Cir. 1997) ("When the defendant's statements, read in context, are readily understood as conjecture, hypothesis, or speculation, this signals the reader that what is said is opinion, and not fact." (applying New York law)); *Rodriguez v. Am. Friends of the Hebrew Univ., Inc.*, No. 96 Civ. 240(JGK), 1998 WL 146227, at *8-9 (S.D.N.Y. Mar. 25, 1998) (finding no defamation where defendant "deliberately disparaged plaintiff's performance" so that she would get fired, because disparagement constituted a statement of opinion (applying New York law)).

Second, Professor Bell's statements cannot be imputed to Yale under the doctrine of respondeat superior. Connecticut courts have "long adhered to the principle that in order to hold an employer liable for the intentional torts of his employee, the employee must be acting within the scope of his employment and in furtherance of the employer's business." *See A-G Foods,*

*Inc. v. Pepperidge Farm, Inc.*, 579 A.2d 69, 73 (Conn. 1990). The Second Amended Complaint

alleges none of the essential elements of respondeat superior, such as Professor Bell's duties as

an employee, whether she was engaged in those duties when she made her statements, and that

her statement aimed to further those duties. *See Doe v. Danbury Hosp.*, DBDCV195015760S,

2021 WL 402055, at *3 (Conn. Super. Ct. Jan. 12, 2021) (dismissing claims alleged under a

vicarious liability theory because the complaint lacked factual allegations that the employee's

actions were intended to further her employer's interests).

While the Court should not prejudge or predict its ruling on Yale's motion to dismiss, the

analysis above shows that the motion will present substantial arguments for dismissal and could

significantly narrow, if not eliminate, the issues in the case. Proceeding with discovery before

that motion is resolved would waste the parties' resources—and, as the next section shows,

potentially the Court's resources as well.

## II.   The Breadth and Burden of Discovery Weigh in Favor of a Stay.

This motion should also be granted because of the breadth of the anticipated discovery. A

stay would prevent "expensive and wasteful discovery during the pendency of a determination

which could potentially reshape pending claims." *ITT Corp.*, 2012 WL 2944357, at *2.

As an initial matter, when considering the exercise of its inherent authority and broad

discretion to stay proceedings "to control the disposition of the cases on its docket with economy

of time and effort for itself, for counsel, and for litigants," *Louis Vuitton Malletier S.A.*, 676 F.3d

at 96, the Court may wish to consider the experiences that other judges in this District have had

with Plaintiffs' counsel during discovery. In the *Kalra* case cited above, Plaintiffs' counsel—

who signed the complaint in this case—was repeatedly sanctioned for "egregious" discovery

abuses. As Judge Dooley recently noted:

> Time and again, this Court has ordered the Plaintiffs to meet their discovery obligations. Time and again, the Plaintiffs have failed to do so. At this juncture, the only remaining question is what the consequences shall be for this egregious course of conduct by the Plaintiffs.

*Kalra v. Adler Pollock & Sheehan, P.C.*, 3:18-CV-00260 (KAD), (D. Conn. Jan. 25, 2021) (attached as Ex. B) at 1 (describing history of discovery misconduct, which continued even after sanctions were granted); *see also id.* at 5-9 (detailing extensive history of discovery misconduct). The Court's exercise of its inherent authority and discretion is appropriately informed by the recent experiences of judges in the District.

Moreover, Plaintiffs' allegations involve several Yale Law School deans and professors whom Plaintiffs presumably intend to depose, as they have indicated in the Rule 26(f) report that they intend to take ten depositions. Plaintiffs have also proposed in that report that depositions begin immediately, meaning that absent a stay, at least three senior YLS officials instrumental to student life and faculty governance—Dean Heather Gerken, Associate Dean of Student Affairs Ellen Cosgrove, and the YLS Director of Diversity Equity & Inclusion ("DEI") Yaseen Eldik—would likely have to review documents and prepare for and attend depositions. So too with several YLS professors who were not sued but are named (or unnamed but clearly referenced) in the Second Amended Complaint. Finally, the student who compiled the document purporting to catalogue the Plaintiffs' misdeeds—a former friend of the Plaintiffs—would probably also have to go through this process. All told, the discovery that Plaintiffs seek would cause significant disturbance within the Yale Law School community. (It will likely also create significantly more press attention for Plaintiffs, who not long ago claimed to want to avoid such attention.) If the Plaintiffs' claims survive a motion to dismiss, then that disturbance is a necessary cost of the pursuit of justice. But if the Plaintiffs' claims might not survive a motion to dismiss—or if they will be narrowed in a way that minimizes the disturbance—then that discovery should be paused

until the Court determines which if any claims should proceed. Even narrowing the litigated claims would substantially diminish the cost and burden of discovery for both sides—and potentially for the Court.

A temporary stay pending the resolution of Yale's potentially dispositive motion to dismiss would allow an efficient and measured approach to discovery management in this case.

### III.   Plaintiffs Would Not Be Prejudiced by the Brief Stay.

Plaintiffs would not suffer any prejudice from a stay of discovery, as there is no compelling need for immediate discovery. "Absent circumstances presenting a compelling need for prompt discovery – as there might be if, for example, provisional relief were being sought or if testimony needed to be preserved due to the ill health of a witness – . . . the principles underlying *Twombly* counsel in favor of granting [a] motion to stay." *DSM Desotech Inc. v. 3D Sys. Corp.*, No. 08-cv-1531, 2008 WL 4812440, at *3 (N.D. Ill. Oct. 28, 2008); *see also, e.g.*, *In re First Constitution Shareholders Litig.*, 145 F.R.D. 291, 294 (D. Conn. 1991) (staying discovery pending resolution of the motion to dismiss, noting "it is likely that discovery will be protracted and it is highly unlikely that the case will be tried within the immediate future; therefore, plaintiffs are not unduly delayed if discovery is stayed for what is expected to be a relatively short period of time"). In sum, "[t]he prejudice to plaintiff from a stay of discovery will be minimal, as discovery will only be stayed until a decision is reached on the Motion to Dismiss." *Cuartero*, 2006 WL 3190521, at *3. As the Rule 26(f) report notes, the parties have conferred on document preservation, and there is no reason to think that a brief pause in discovery will deprive Plaintiffs of access to preserved documents or the opportunity to ask witnesses questions under oath at their depositions.

If the motion to dismiss is granted, then both parties will have saved considerable time and expense. If the motion to dismiss is denied, then Plaintiffs will have ample opportunity to conduct all discovery to which they may be entitled.

## CONCLUSION

The Court should temporarily stay discovery pending the resolution of Defendants' forthcoming motion to dismiss.

Respectfully submitted,

*/s/ Jonathan M. Freiman*
Jonathan M. Freiman (ct24248)
Paul A. Tuchmann (ct8128)
WIGGIN AND DANA LLP
One Century Tower
265 Church Street
PO Box 1832
New Haven, CT 06508-1832
jfreiman@wiggin.com
ptuchmann@wiggin.com
Tel.: (203) 498-4400
Fax: (203) 782-2889

*Counsel for Defendants*

490\301\4854-5948-0842.v1

17