# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

SIERRA STUBBS and GAVIN JACKSON,

                          Plaintiffs,

v.

HEATHER GERKEN, ELLEN COSGROVE, YASEEN ELDIK, and YALE UNIVERSITY,

                          Defendants.

Case No. 3:21-cv-01525

# DEFENDANTS' REPLY MEMORANDUM OF LAW
# IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS

**ORAL ARGUMENT REQUESTED**

**INTRODUCTION**

Plaintiffs turned a student soap opera into a federal case. As drama, it has succeeded, luring reporters and bloggers mesmerized by the relationships and culture at one of the nation's premier law schools. But as a lawsuit, it fizzles. Measured against governing law, instead of as clickbait, the allegations fail.

The motion to dismiss showed why Plaintiffs' contract claim was based on a Policy not yet in existence at the time of the allegations, and how the alleged actions wouldn't have violated that Policy even if it had already been in place. The motion showed why their promissory estoppel claim pointed to no promise outside that same Policy, and how the claim explicitly pleaded the existence of a contract. The motion showed why Plaintiffs' intentional interference claim failed: they haven't pleaded any actual relationships with any judges or professors except the one Professor, and they don't claim that he rejected their applications. The motion explained why the defamation claim is improperly built on evaluative opinions—protected speech about students that professors and administrators engage in daily—and that the Privacy Claims fail because the complaint alleges not that Defendants publicized the "dossier," but merely that some of them shared it with a single Professor after it had circulated widely within the law school community. Finally, it showed that Plaintiffs have not come close to overcoming the high bar for alleging extreme and outrageous conduct or severe emotional distress.

In response, Plaintiffs, already on their third complaint, turn to script doctoring. Trying to re-frame the story, they misrepresent their own allegations. And then to cover up for what's missing, they toss in innuendos of racially-motivated retaliation and sexual harassment—actions that they never pleaded and never could.  When stripped of misrepresentations and unpleaded innuendo, their allegations amount to a thin and threadbare blanket, insufficient to clothe their

1

"naked assertion[s]" with the sort of "factual enhancement" necessary to survive a motion to dismiss.  *See Bell. Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).

## ARGUMENT

### I. The SAC Does Not State a Breach of Contract Claim

To avoid the plain language of the Policy they claim was breached, Plaintiffs misrepresent their own allegations, the Policy, and relevant authority.

They also rely on material outside the pleadings. Plaintiffs implicitly concede that this Court can consider the Policy, which became effective on August 1, 2021, after the conduct at issue in this lawsuit occurred. *See* Opp. 15.[1] Seeking to avoid that problem, they create another, going beyond their complaint to point to a statement from a Yale website (the "Statement") never referenced in their complaint. They argue that this Statement shows that similar policies had existed before the Policy went into effect. Opp. 16. But the Statement, unlike the Policy, cannot be considered here. Unlike the Policy, which is the backbone of Plaintiffs' breach of contract claim and repeatedly referenced in the SAC, *id.* ¶¶ 9, 73, 84–88, the Statement is never mentioned in the SAC and can't be considered here. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153–54, 153 n.4 (2d Cir. 2002) (finding trial court properly considered contracts on a Rule 12(b)(6) motion because they were repeatedly referenced in and thus integral to the complaint, but finding trial court erred in considering documents not referenced in the complaint).[2]

---

[1] This brief retains the same conventions as the Memo. of Law in Support of Defs.' Mot. to Dismiss, ECF No. 36-1, referred to here as "Mot." Plaintiffs' opposition is referred to as "Opp." Throughout this brief, unless otherwise indicated, emphasis is added and internal citations, quotation marks, alterations, brackets, and ellipses are omitted.

[2] Plaintiffs didn't ask this Court to take judicial notice of the Statement, but even if they had, and even if judicial notice of a private website were appropriate, the Court can only take notice of what the documents state, "not for the truth of the matters asserted." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007). Yet Plaintiffs ask the Court not only to presume the truth of the Statement's contents, but to credit their interpretation of it, which is that the Policy "merely

2

Plaintiffs also ignore the actual language of the Policy.³ They cite the retaliation section but ignore that it defines retaliation as "any adverse action taken against a person who has reported a concern, filed a complaint, and/or participated in an investigation **pursuant to this policy**." *See* Opp. 15–16. As Plaintiffs acknowledge, the Policy's name is the "Yale University Policy Against Discrimination and Harassment," *id.* at 15, and it defines Discrimination and Harassment in terms of specific "protected characteristics," namely "sex, sexual orientation, gender identity or expression, race, color, national or ethnic origin, religion, age, disability, status as a special disabled veteran, veteran of the Vietnam era or other covered veteran, or membership in any other protected classes as set forth in Connecticut and federal law," [9000 Yale University Policy Against Discrimination and Harassment | It's Your Yale](). True, the Policy prohibits retaliation, but it defines Retaliation as "any adverse action taken against a person who has reported a concern, filed a complaint, and/or participated in an investigation **pursuant to this policy**." *Id.* That clearly means actions relating to Discrimination or Harassment on the basis of protected characteristics. As the Policy states:

> Retaliation includes conduct that would discourage a reasonable person from engaging in activity protected **under this policy**. Retaliation may be present even where there is a finding of "no responsibility" on the underlying allegations of

---

restated existing Yale prohibitions." Opp. 16. That is not what Plaintiffs pleaded, and they can't rely on a Statement outside the SAC to fill a gaping hole in it. In any event, the Statement changes nothing. The "prior policies" it references are consistent with the Policy, prohibiting retaliation only for discrimination and harassment related to a protected characteristic. *See* UWC Sexual Misconduct Procedures (attached as Exh. 1); Preventing and Responding to Sexual Misconduct (attached as Exh. 2); [Policies & Definitions | Resources for Students to Address Discrimination and Harassment Concerns (archive.org)]() (attached as Exh. 3); Promoting Diversity & Equal Opportunity at Yale, 2019-2020 (attached as Exh. 4). Had Plaintiffs sought leave to amend (they did not), amendment based on the Statement would be futile.

³ Plaintiffs don't respond to Defendants' point that the contract claim against Gerken, Cosgrove, and Eldik also fails because administrators aren't individually responsible for alleged breaches of a contract between a student and a university. Mot. 13 n.9. Plaintiffs also don't respond to the point that they never allege Eldik shared the "dossier" with the Professor or even met with him, meaning all claims against him (contract or otherwise) should be dismissed.

> **Discrimination** or **Harassment**.  Retaliation does not mean good faith actions lawfully pursued in response to a report of **Discrimination** or **Harassment**.  In determining whether an act constitutes Retaliation, the context of the act will be considered, including the individual's exercise of free expression in accordance with Yale's free expression policies.

*Id.* Plaintiffs do not allege that any Defendant retaliated against them because they "reported a concern, filed a complaint, and/or participated in an investigation" concerning discrimination or harassment based upon "protected characteristics."

Faced with the Policy's plain language, they now contend they "reported concerns regarding racial discrimination and harassment, as the Dossier attempted to delegitimize their experiences as students of color." Opp. 17. But that is not what the SAC says. It says they complained of harassment in the form of an "invasion of privacy," SAC ¶ 57, "false rumors being spread by other students," and "lies and misrepresentations" in the "dossier," *see id.* ¶¶ 65–66.  And the "dossier," unlike Plaintiffs' opposition, focuses on the students' intramural soap opera, particularly Chua's alleged "secret dinners" and connections to federal judges. The "dossier" does not concern Plaintiffs' respective genders or experiences as students of color, and the opposition's unsupported post-hoc assertions can't change that fact. *See, e.g.*, Dossier, SAC Exh. A, ECF No. 30-1 at 3.

Plaintiffs likewise now claim that they were retaliated against for participating in an investigation regarding "allegations of sexual harassment." Opp. 18. But again, they never said that in the SAC.[4]  They cite one paragraph, which quotes a text message from the "dossier" decrying the "secret atmosphere of favoritism, misogyny, and sexual harassment" purportedly enabled by the supposed secret dinner parties at Chua's home. *Id.* (citing SAC ¶ 51). That

---

[4] Defendants never assert that the Policy doesn't protect witnesses giving statements supporting an accused student in a sexual harassment proceeding. *Contra* Opp. 18. Plaintiffs' allegations do not concern retaliation connected to a sexual harassment investigation.

4

paragraph doesn't discuss any investigation spurred by the "dossier," let alone one involving sexual harassment. The SAC itself asserts that Defendants were *not* "investigating the allegations made in the Dossier," *id.* ¶ 53, and alleges only an investigation into Chua pertaining to whether she violated an agreement with Yale not to have students at her home, *id.* ¶ 1. Nothing in the SAC alleges any investigation into sexual harassment.[5]

Unable to state a claim for breach of the actual Policy, Plaintiffs argue they have stated a claim under an "implied promise" or a "custom." Opp. 18–19. Yet they do not identify what the promise or custom was, or where it appeared. Every case they cite to support their implicit promise argument concerns a "specific, identifiable promise." *See Johnson v. Schmitz,* 119 F. Supp.2d 90, 93, 96–97 (D. Conn. 2000) (discussing "alleged promises . . . based on Yale's own representations and procedures" contained in "distributed documents" and "an alleged agreement by Yale"); *Burns v. Quinnipiac Univ.*, 991 A.2d 666, 674 (Conn. App. 2010) ("In this case, the educational contract encompassed, inter alia, the handbook and the [written] financial aid policy."); *Osberg v. Yale Univ.*, 2009 WL 659072, at *1 (Conn. Super. Feb. 11, 2009) (noting the plaintiff's breach of contract claim was based upon a written university bulletin).  Here, Plaintiffs only allege the Policy, and for the reasons above, the Policy's words don't help them.

Their related argument that some unnamed university "custom" supports a breach of contract claim has no basis in Connecticut law. The cases Plaintiffs cite explain that contracts can be interpreted in light of industry custom. But custom, on its own, cannot constitute a contract: "Contracts are not created by evidence of customs and usage." *Gagnon v. Housatonic Valley Tourism Dist. Comm'n*, 888 A.2d 104, 111 (Conn. App. 2006). Plaintiffs allege they

---

[5] Nor does the "dossier" say that sexual harassment occurred at the alleged dinner parties at the home of Chua and her husband, Professor Jed Rubenfeld.

suffered adverse consequences for refusing to make a statement against Chua, but the SAC contains no allegations about customs in that context.[6]

## II.     Plaintiffs' Promissory Estoppel Claim Fails

Plaintiffs' promissory estoppel claim impermissibly duplicates their contract claim. Both are based on the same alleged promise: the Policy. *See* Mot. 17-18. Plaintiffs fall back on allegations that concern the same "promise" alleged in their breach of contract claim. *Compare* SAC ¶¶ 90–92 (alleged promise not to retaliate), *with* ¶¶ 85–88 (same alleged promise not to retaliate). They offer no authority saying they can plead claims in the alternative given the lack of any allegation of a promise independent from the Policy. Moreover, Plaintiffs' promissory estoppel claim directly incorporates their allegation of a contract, *see* Mot. 18–19, which "renders a promissory estoppel claim invalid," *see Miller Auto. Corp. v. Jaguar Land Rover N. Am., L.L.C.*, 2010 WL 3260028, at *8 (D. Conn. Aug. 12, 2010). They offer no response.

## III.    Plaintiffs' Intentional Interference Claim Should Be Dismissed

Plaintiffs' intentional interference claim is fatally flawed as well. First, the only specific business relationship they allege is the one with the Professor. *See* Mot. 19–21. Their claim that they "had a prospective relationship with Yale's [other] professors and judges' chambers around the country," SAC ¶ 94, is speculative and categorical, not about specific relationships. Plaintiffs offer no authority supporting such a claim, and could not, because "plaintiffs cannot establish a claim for tortious interference with a business expectancy with a third party that they cannot identify." *Callahan v. Callahan*, 2017 WL 3332743, at *2 (Conn. Super. June 27, 2017). They contend that their claim identifies more limited sets of potential relationships than some other

---

[6] Plaintiffs want discovery so they can fish for a relevant custom. But they do not allege any relevant custom. It's pure speculation. *See Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level . . . .").

plaintiffs have identified; they "have not merely pleaded that they lost opportunities in the legal industry," Opp. 22, but lost opportunities with all federal judges and all YLS professors. But that doesn't matter: alleging thousands of lost relationships—instead of hundreds of thousands— doesn't make an allegation sufficiently specific. It still identifies no one.

Second, Plaintiffs do not plausibly allege actual loss. *See* Mot. 21–22. They say they "alleged they were unable to become Coker Fellows because of Defendants['] retaliation," Opp. 23, but the complaint does not allege they applied for Coker fellowships, or that any Yale professor denied their applications.[7] And while they say their clerkship opportunities were stunted, the SAC does not say that Defendants blocked them from applying or (somehow) convinced judges to reject their applications. In fact, their theory is inherently speculative: they allege they will "*potentially* suffer further losses in the form of clerkships." SAC ¶ 97.

## IV. The SAC Does Not State a Defamation Claim

Plaintiffs list the factors relevant to determining whether a statement constitutes a fact or an opinion, Opp. 25, but they don't apply them, instead just reiterating their allegations. Their evasion is understandable, given that their own complaint alleges that Gerken and Cosgrove "*believed*" Plaintiffs were lying and showed the Professor parts of the "dossier" they thought supported their belief. *See* SAC ¶¶ 71–72. In short, they allege Gerken and Cosgrove shared evaluative opinions protected under Connecticut law. *See NetScout Sys., Inc. v. Gartner, Inc.*, 223 A.3d 37, 48 (Conn. 2020) (distinguishing between actionable statements of objective fact and "personal *comment[s]* about another's conduct, qualifications or character," which constitute unactionable protected evaluative opinion) (emphasis original). Plaintiffs allege Gerken and

---

[7] They cite SAC ¶¶ 29–30, which only allege Coker fellowship benefits. *See* Mot. 23. They cite SAC ¶ 96, which only alleges that Defendants approached the Professor to dissuade him from offering Plaintiffs a Coker fellowship—not that Plaintiffs applied to him and were rejected.

7

Cosgrove did what professors and university administrators do—evaluate students. *See, e.g.*, *Johnson*, 119 F. Supp. 2d at 101–02 (finding statements about a student made by Yale professors in a meeting with other professors were "merely expressions of opinion"). Plaintiffs cite no authority to support the novel assertion that Defendants had to conduct an "investigation" before offering an evaluation of students.

Plaintiffs' contention that Gerken and Cosgrove's evaluative opinions "implied knowledge of existing facts," Opp. 26, misses the mark. Their alleged opinions were based on the "dossier," which Plaintiffs say they gave the Professor. SAC ¶ 72. Their opinions were not "based on facts unknown to the reader or listener": they disclosed the basis. *See Held v. Silver*, 2013 WL 5658255, at *9–10 (D. Conn. Oct. 16, 2013) (holding that even a statement that "could be construed as a statement of fact regarding Defendant's character" constituted an opinion because it was accompanied by a document that the opinion was explicitly based on).[8]

Finally, the arguments regarding Bell's alleged statements lack merit. There's no question that "characterizing a lawsuit as frivolous, foolish or in some other derogatory manner constitute matters of opinion." *E.g.*, *Traylor v. Parker*, 2016 WL 5003981, at *4 (Conn. Super. Aug. 4, 2016). Opining that Plaintiffs do not "think they can win," SAC ¶ 82, is not a factual statement. *See Cassidy v. Lawson*, 2005 WL 2508593, at *5 (D. Conn. Sept. 29, 2005). Moreover, Yale is not responsible for Bell's alleged commentary because Plaintiffs don't allege the required elements of respondeat superior. *See* Mot. 27–28.[9] Alleging Yale acted "through

---

[8] Plaintiffs don't respond to the argument that their defamation allegations lack the required specificity. *See* Mot. 25 & n.13. And they offer no authority for their theory that Defendants defamed them by "sharing" the widely-available "dossier" with the Professor.

[9] Plaintiffs also don't say why Gerken, Cosgrove, or Eldik are responsible for Bell's statements.

Bell," SAC ¶ 100, is not the same as alleging that Bell is employed to comment on lawsuits against Yale or that she did so to "serve" Yale, *see* Opp. 27-28. Plaintiffs allege neither.

### V.    Plaintiffs' Unreasonable Publicity and False Light Claims Are Meritless

The Privacy Claims fail because Plaintiffs do not allege that any Defendant *publicized* the "dossier"; they allege Gerken and Cosgrove shared it with one person, the Professor. *See* Mot. 30; SAC ¶ 72. The unreasonable publicity claim also fails because the "dossier" was not private when allegedly shared, having already been widely circulated at YLS, and its contents attracted great public interest. *See* Mot. 30–32. Plaintiffs respond by running from their allegations. They assert that Defendants shared the "dossier" with the public, Opp. 28, but the cited paragraphs don't say that. SAC ¶ 6 says Defendants "disseminated" the "dossier," without saying which defendant disseminated it to whom. That introductory paragraph, which does not satisfy *Twombly* or *Iqbal*, merely previews the single specific allegation of dissemination, in which Plaintiffs aver that the "dossier" was given "to Plaintiffs' employer and professor," the Professor. SAC ¶ 9.[10] Plaintiffs simply ignore Defendants' public interest argument. *See* Mot. 31–32.

### VI.    Plaintiffs' IIED Claim Is Fatally Deficient

Plaintiffs fail to allege extreme and outrageous conduct and severe emotional distress. Mot. 33–36. Their opposition cures neither failure.[11] Plaintiffs' argument on extreme and outrageous conduct is entirely conclusory. They do not distinguish Defendants' authorities or

---

[10] Plaintiffs also cite SAC ¶ 6 to support the new assertion that the "dossier" wasn't public when it was allegedly shared with the Professor. Opp. 29. But SAC ¶ 6 doesn't say that.

[11] Plaintiffs never allege that race played any role in Defendants' alleged actions. But they use loose language in their opposition brief to falsely imply racist motives. *See* Opp. 29–30 ("Gerken and Cosgrove's alleged conduct was extreme and outrageous because their conduct constituted retaliation against two students of color."). If Plaintiffs had a good-faith basis to believe they suffered harassment or discrimination on the basis of race—a protected characteristic—they would plead that. But they have no good faith basis for such claims. Instead, their counsel shamefully weaves the implication through the brief, along with innuendos of sexual harassment.

cite any of their own, instead merely repeating their allegations. They assert, without authority, that retaliation is inherently extreme and outrageous, Opp. 29–31, but that is not true. *See, e.g.*, *Hartmann v. Gulf View Estates Homeowners Ass'n, Inc.*, 869 A.2d 275, 278 (Conn. App. 2005) (finding retaliation did not reach "the level of extreme or outrageous behavior required to state a cause of action" for IIED).

They likewise ignore the authority holding that "severe emotional distress" requires allegations that Plaintiffs obtained medical or psychological treatment or were in distress for an extended period. *See Maselli v. Reg'l Sch. Dist. No. 10*, 235 A.3d 599, 617 (Conn. App. 2020) ("Emotional distress is unlikely to be considered severe in the absence of treatment, medical, psychological, or otherwise."), *certification denied*, 238 A.3d 19 (Conn. 2020); *Perez-Dickson v. City of Bridgeport*, 43 A.3d 69, 102 (Conn. 2012) ("There was no evidence that the plaintiff was in distress for an extended period or that she sought medical treatment."). They cite an older case, *Berry v. Loiseau*, 614 A.2d 414 (Conn. 1992), noting that an IIED damage award need not be based on incurred medical expenses, *see id.* at 426–27, but the Connecticut Supreme Court later made clear in *Perez-Dickson* that a plaintiff must *either* seek medical treatment *or* be in distress for an extended period, and *Berry* does not say otherwise.

## CONCLUSION

The SAC should be fully dismissed with prejudice. Plaintiffs have not explained how they could cure their pleading deficiencies, *see TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014), or asked for leave to amend, *see Williams v. Citigroup Inc.*, 659 F.3d 208, 212 (2d Cir. 2011).

**DEFENDANT YALE UNIVERSITY**

*/s/ Jonathan Freiman*
Jonathan M. Freiman (ct24248)
Paul A. Tuchmann (ct8018)
Wiggin and Dana LLP
One Century Tower
265 Church Street
PO Box 1832
New Haven, CT 06508-1832
jfreiman@wiggin.com
ptuchmann@wiggin.com
Tel.: (203) 498-4400
Fax: (203) 782-2889

490\301\4887-8316-8794.v1