# EXHIBIT 1

# Procedures of the University-Wide Committee on Sexual Misconduct

## Introduction

Yale University is committed to maintaining and strengthening an educational, employment, and living environment founded on civility and mutual respect. Sexual misconduct is antithetical to the standards and ideals of our community, and it is a violation of Yale policy and the disciplinary regulations of Yale College and the Graduate and Professional Schools. Sexual misconduct will not be tolerated.

Under Yale policy, sexual misconduct incorporates a range of behaviors including sexual assault (which includes rape, groping, and any other non-consensual sexual contact); sexual harassment; intimate partner violence; stalking; and any other conduct of a sexual nature that is non-consensual or has the purpose or effect of threatening or intimidating a person or persons. Violations of Yale's Policy on Teacher-Student Consensual Relations are also considered sexual misconduct. Yale aims to combat sexual misconduct through education, training, clear policies, and serious consequences for violations of these policies. In addition to being subject to university disciplinary action, sexual misconduct may lead to civil liability and criminal prosecution. Yale's policies and definitions governing sexual misconduct can be found here.

Individuals who have experienced sexual misconduct may seek assistance from one of Yale's Title IX Coordinators, who are faculty and staff members available to talk with community members about sexual misconduct concerns and questions, a specific incident, or the campus sexual climate in general.  Title IX Coordinators can help arrange supportive measures, explain options for pursuing complaints, receive formal complaints, and, in some circumstances, file formal complaints.  More information on the role of the Yale Title IX Coordinators, the services they can provide, and their contact information is available here.

Individuals may also seek assistance from the University-Wide Committee on Sexual Misconduct ("UWC"), which is appointed by the provost and chaired by a tenured member of the faculty.  The UWC and its professional staff are available to answer inquiries, work with the Title IX Coordinators to arrange supportive measures, fairly and expeditiously address formal complaints, and assist with alternative complaint resolutions.  The work of the UWC is administered by the UWC Secretary.[1]  The provost and the University Title IX Coordinator will meet regularly with the UWC chair to discuss the work of the UWC and the efficacy of these procedures.

Filing a complaint with the UWC or a Title IX Coordinator is not a prerequisite to filing a complaint of discrimination with Connecticut's Commission on Human Rights and Opportunities, the federal Equal Employment Opportunity Commission, the U.S. Department

---

[1] In these procedures, the term "Secretary" includes the UWC's Associate Secretary.

of Education's Office for Civil Rights, or any other state or federal agency, and seeking assistance from the UWC in no way precludes filing a state or federal discrimination complaint.

Individuals who have experienced sexual misconduct may also contact the SHARE Center and the Yale or New Haven Police Departments, in addition to seeking assistance from a Title IX Coordinator or the UWC.

## 1.      Reporting Allegations of Sexual Misconduct and Obtaining Supportive Measures

Any person may report sexual misconduct to a Title IX Coordinator (whether or not the person reporting is the alleged target of the misconduct).[2]  A person who reports sexual misconduct may do so without pursuing a formal complaint.

The Title IX Coordinator will offer supportive measures, as appropriate, to the person who allegedly suffered misconduct ("the complainant") and the person alleged to have committed the misconduct ("respondent")[3].  Supportive measures are non-disciplinary, non-punitive, individualized services offered as appropriate, as reasonably available, and without fee or charge. These measures will be offered before or after the filing of a formal complaint or where no formal complaint has been filed.  They are designed to restore or preserve equal access to Yale's education programs and activities, without unreasonably burdening any of the parties.  Supportive measures include measures designed to protect the safety of all parties, protect the safety of Yale's educational environment, or deter sexual misconduct. Supportive measures may include, but are not limited to:

- counseling;
- extensions of deadlines or other course-related adjustments;
- modifications of work or class schedules;
- campus escorts;
- mutual restrictions on contact between the parties;
- changes in work or housing locations;
- voluntary leaves of absence;
- reasonable limitations on access to Yale programs and activities; and
- increased security and monitoring of certain areas of the campus.

---

[2] The report can be made in person, by mail, by telephone, or by email, using the contact information listed for the Title IX Coordinator, or by any other means that results in the Title IX Coordinator receiving the person's report. Such a report may be made at any time, including during non-business hours.

[3] Together, the complainant and respondent are referred to in these procedures as "the parties." A single complaint may involve more than one complainant and/or more than one respondent.  The singular is used throughout these procedures for convenience only.

Yale will maintain as confidential and refrain from disclosing any supportive measures provided to the parties, except to the extent that maintaining such confidentiality would impair Yale's ability to provide the measures. The Title IX Coordinator is responsible for coordinating the effective implementation of supportive measures and any remedies.

**2.      Options to Pursue Alternative Resolutions of Sexual Misconduct Allegations**

Persons involved in allegations of sexual misconduct may prefer to resolve the allegations without formal proceedings, with the assistance of a Title IX Coordinator.  This is a voluntary choice that the parties may wish to make after meeting with a Title IX Coordinator and fully exploring their options.

The following rules apply to all alternative resolutions:

- The parties must voluntarily consent in writing to participate in an alternative resolution process; Yale will never require that they do so or condition the educational, employment, or other rights of parties on the waiver of their right to an investigation and adjudication of formal complaints of sexual misconduct.
- In order for the parties to proceed with an alternative resolution, the university must agree that an alternative resolution is appropriate to the circumstances of the case.
- Yale will not offer a process for the alternative resolution of allegations brought by or on behalf of students against Yale employees, including faculty members.
- At any time prior to agreeing to an alternative resolution, any party has the right to withdraw from the alternative resolution process and resume or initiate a formal complaint process.
- If an alternative resolution process is initiated but not completed, records of the process ordinarily will be destroyed.
- No documents or statements made in the alternative resolution process may be used in a subsequent formal complaint proceeding about the same allegations.
- Absent exceptional circumstances, alternative resolutions are not available in cases of behavior, which, if proven, would indicate that the respondent presents a danger to the safety of the Yale community.

As discussed in Section 4, below, federal regulations for the implementation of Title IX of the Education Amendments of 1972 provide detailed rules for addressing formal complaints of some types of sexual misconduct, including sexual assault, intimate partner violence, stalking, and some forms of sexual harassment.  Sexual misconduct covered by these regulations is referred to below as "Title IX sexual misconduct" and is defined here.  Yale will not offer an alternative resolution process for allegations of Title IX sexual misconduct, unless a formal complaint has been filed.  So long as Yale provides written notice of the procedures discussed in this section, Yale may offer the parties an alternative resolution process at any point after a formal complaint of Title IX sexual misconduct has been filed and before a determination regarding responsibility has been reached.  No formal complaint

is required to initiate an alternative resolution process for an allegation of sexual misconduct that is not covered by the federal regulations.

## 3.    Provisions Applicable to all Formal Proceedings

### 3.1    Procedural guidance from a Title IX Coordinator and the UWC Secretary

Title IX Coordinators and the Secretary of the UWC are available to help the parties understand these procedures.  In particular, the parties may wish to discuss which of Yale's two formal processes applies to the circumstances of their case.  (These processes are described in Sections 4 and 5, below.)  When bringing formal complaints to a Title IX Coordinator, complainants are not required to identify the process they believe should apply.

### 3.2    Conflicts of interest and bias

No one designated by Yale to play a role in investigating, adjudicating, or resolving a matter under these procedures may play such a role if their participation would be affected by a conflict of interest or by bias for or against complainants or respondents, generally, or an individual complainant or respondent, specifically.

### 3.3    Confidentiality and honesty

Parties to a formal proceeding under these procedures are not restricted in their ability to discuss the allegations under investigation, the fact that a complaint has been filed, or Yale's handling of the complaint.  However, all documents that are prepared specifically for use in a formal proceeding ("Confidential Documents") must be held in strict confidence. Parties may not disclose Confidential Documents to anyone other than their advisors in the formal proceeding, family members, and attorneys, and they must inform these recipients that Confidential Documents are strictly confidential and may not be further disclosed.  No member of the Yale community may publish Confidential Documents, no matter how the documents are acquired.  Disciplinary action may be taken against any member of the Yale community who discloses or publishes a Confidential Document in violation of these procedures or who is responsible for the improper disclosure or publication of such documents by others.  The Provost's Statement on the Confidentiality of Sexual Misconduct Documents elaborates on these confidentiality obligations.

An individual who approaches a Title IX Coordinator or the UWC with an inquiry may ask that the matter be kept confidential from the accused or other persons involved in the events.  Yale will respect the confidentiality of the matter, unless the wellbeing of the Yale community or individual members requires that Yale disclose the matter.  In addition, Yale may not be able to preserve the complete confidentiality of formal proceedings in the event of litigation or a government investigation.  Finally, respondents may have access to sexual

misconduct allegations that become part of their education records or personnel files, although in such cases the university will remove information identifying complainants.

Yale strongly encourages parties and witnesses to cooperate in formal proceedings, and those who do so must provide truthful information in all phases of the proceedings.  Any person who, in bad faith, provides false information that is material to a formal proceeding may receive a more severe penalty or be referred for discipline.

## 3.4    Retaliation

Yale policy forbids intimidating, threatening, coercing, or discriminating against individuals because they report sexual misconduct, file complaints of sexual misconduct, cooperate in the investigation of sexual misconduct, hear formal complaints of sexual misconduct, or otherwise exercise their rights under Title IX and these procedures.

## 3.5    Recordkeeping

The UWC will maintain for seven years the following records of formal sexual misconduct proceedings:

- all evidence directly related to the allegations raised in a formal complaint, investigation reports, hearing transcripts or recordings, dismissal decisions, and hearing panels' reports;
- all penalties imposed on the respondent and any remedies provided to the complainant designed to restore or preserve equal access to Yale's education programs or activities; and
- all appeals and appeal decisions.

The UWC Secretary or other responsible official will summarize each formal complaint of sexual misconduct that the official receives and the resolution of those complaints and submit the summaries to the University Title IX Coordinator after each complaint is resolved. The summaries will contain sufficient information to allow the University Title IX Coordinator to assess Yale's compliance with the requirements of Title IX.

## 4.    Formal Sexual Misconduct Proceedings that are Subject to Federal Regulations

Federal regulations for the implementation of Title IX of the Education Amendments of 1972 provide detailed rules for addressing formal complaints of some types of sexual misconduct, including sexual assault, intimate partner violence, stalking, and some forms of sexual harassment.  Sexual misconduct covered by these regulations is referred to below as "Title IX sexual misconduct" and is defined here.

**4.1     Conditions for bringing a formal complaint of Title IX sexual misconduct.**

A person who has experienced Title IX sexual misconduct may bring a formal complaint to the UWC, so long as these conditions are met:

- The misconduct complained of meets the definition of Title IX sexual misconduct under federal regulations.
- At the time the complaint is filed, the person bringing the complaint is participating in or seeking to participate in a Yale program or activity.
- The person accused of the misconduct is employed by Yale or is enrolled in a Yale program or activity.
- The alleged misconduct occurred on the Yale campus; at a Yale sponsored event; in another place, event, or circumstances over which Yale exercised substantial control; or in a building owned or controlled by a student organization officially recognized by Yale.
- The misconduct was directed toward a person in the United States.

**4.2     Advisors**

Parties may be accompanied by an advisor at any stage of a formal proceeding. An advisor may be anyone of the party's choosing, including an attorney.  The advisor can offer personal and moral support, before, during, and after a hearing, and help the party prepare for meetings related to a complaint. The advisor may not submit documents, either directly or indirectly, on a party's behalf at any stage of the proceeding, nor speak for the party during an interview with an investigator (see Section 4.7, below).  As discussed in Section 4.8, below, the advisor may question the other party and witnesses at a hearing and discuss the relevance of questions directly with the hearing officer.  Otherwise, an advisor may not speak for a party at a hearing.

A party must provide the advisor's name and contact information to the UWC Secretary ("Secretary") prior to meeting with the investigator.  A party must also inform the Secretary if a new advisor is selected.  The Secretary will send the advisor copies of Confidential Documents (see Section 3.3, above), unless the party requests otherwise.  A party wishing to bring an attorney as an advisor must inform the Secretary at least five days in advance of the first meeting that the advisor will attend.

Parties may have no more than one advisor with them at a meeting, including a hearing.  If a party plans to change advisors for the hearing, the party must inform the Secretary at least five days before the hearing.  If a party does not have an advisor, the Secretary will appoint an advisor for the hearing, at no cost to the party.[4]

---

[4] If a party does not attend a hearing or does not bring an advisor to a hearing, Yale will appoint an advisor to question the other party and witnesses.

**4.3     Initiating a formal complaint of Title IX sexual misconduct under Section 4**

A person wishing to make a formal complaint of Title IX sexual misconduct under Section 4 must submit to a Title IX Coordinator and the Secretary a written complaint that is signed, sent electronically from the complainant's account, or otherwise authenticated.  The complaint must include the names of the parties involved in the incident, if known; a description of the alleged Title IX sexual misconduct; and the date and location of the alleged incident, if known.  The Secretary and the chair of the UWC ("Chair")[5] will determine whether the complaint meets the conditions set out in Section 4.1 above and whether it provides sufficient detail or must be supplemented.  If the complaint does not meet the conditions in Section 4.1 or must be supplemented, the Secretary will write to the complainant, asking the complainant to revise or withdraw the complaint, and explaining other options that the complainant may have for addressing the alleged misconduct.  If the complainant declines to revise or withdraw the complaint, the UWC will accept the complaint and immediately consider whether it should be dismissed under Section 4.4, below.

If a complaint meets the conditions for further proceedings, the Secretary will send a written notice to both parties, with the following information:

- a copy of the complaint;
- a statement that the respondent is presumed not responsible for the alleged conduct and that a determination regarding responsibility will be made at the conclusion of the proceeding;
- a statement that the parties may have an advisor of their choice, who may be, but is not required to be, an attorney;
- a statement that the parties may inspect and review any evidence obtained as part of the investigation that is directly related to the allegations raised in the formal complaint, including (i) evidence upon which Yale does not intend to rely in reaching a determination regarding responsibility and (ii) inculpatory or exculpatory evidence, whether obtained from a party or other source;
- a statement that these procedures prohibit knowingly providing false information during the proceeding; and
- a copy of these procedures.

**All time periods governing the investigation, hearing, and appeal of a complaint are set out in Section 4.11, below.**

At any point before the submission of an investigation report to the hearing panel, as discussed in Section 4.7 below, the UWC may consolidate complaints of sexual and other misconduct that have been made against more than one respondent, or by more than one complainant against one or more respondents, or by one party against the other party, so

---

[5] The Chair may designate another member of the committee to act in the Chair's place, and all references to the Chair should be understood as including the Chair's designee.

long as the allegations arise out of the same facts or circumstances.[6]  The decision to consolidate complaints will be made by the Secretary and the Chair.  If complaints are consolidated after the parties have received the initial notice of a proceeding, the Secretary will provide the parties with a revised notice.  The UWC will not accept a new complaint if it has already decided a complaint based on the same set of circumstances by the same complainant.

To the extent necessary to implement supportive measures, the Secretary will inform relevant Yale officials that a formal complaint has been filed. The Title IX Coordinator(s) will coordinate appropriate supportive measures, and university officials are expected to cooperate in implementing those measures.

**4.4    Dismissal or withdrawal of a complaint; alternative resolution**

The Chair and the Secretary will consider dismissing a complaint if, at any point during a proceeding, information emerges establishing that:

- the conduct alleged in the complaint would not constitute Title IX sexual misconduct, even if proved;
- the conduct alleged did not occur in a Yale program or activity;
- the conduct alleged was not directed at a person in the United States;
- the respondent is no longer enrolled or employed by Yale; or
- specific circumstances would prevent the UWC from gathering evidence sufficient to reach a determination of responsibility.

The Secretary will send the parties simultaneous written notice of the decision regarding dismissal, including the reasons for the decision.  Either party may appeal a decision regarding dismissal, under Section 4.10, below.  If a case is dismissed under Section 4 but meets the requirements of Section 5, the case will be converted to a Section 5 proceeding, under conditions determined by the Chair and the Secretary.

The complainant may, at any time before the day scheduled for the hearing, request in writing to the Secretary that the complaint be withdrawn. The Chair and the Secretary will decide whether to agree to the request.  If the Chair and Secretary decide to hear a complaint despite a request for withdrawal, the complainant will not be required to participate in the proceeding.

---

[6] Complex complaints may combine allegations of sexual misconduct and other offenses, and the UWC may not be the only university body with authority to hear a complaint. In such cases, the UWC will retain jurisdiction over all charges of sexual misconduct, and other charges will be heard according to the circumstances of each complaint. In some cases, for example, the UWC may hear all charges, and, in other cases, a different decision-making body may decide the charges that do not relate to sexual misconduct. In cases involving multiple types of allegations, the UWC Chair will consult with the official responsible for the other relevant body and, if necessary, the provost.

Once a formal complaint is filed and before a determination regarding responsibility has been reached, the parties may be offered an alternative resolution process, such as mediation or restorative justice, to which both parties must give their voluntary, informed, written consent.  The UWC may not require the parties to participate in an alternative resolution process.  See Section 2, above, for information on alternative resolution processes.

## 4.5    Appointment of investigators, hearing officers, other hearing panel members, and appellate decision makers

After accepting a complaint for a formal proceeding, the Chair will appoint (i) an investigator to investigate the complaint; (ii) a hearing officer, trained as an attorney, to preside over the hearing of the complaint and participate in deciding the case; (iii) three UWC members to serve with the hearing officer on the hearing panel and participate in deciding the case;[7] and (iv) an appellate decision maker, who must be a tenured faculty member on the UWC[8] (collectively, "appointees").  The Secretary will send a written notice to the parties, providing the names of the appointees and informing the parties of their opportunity to object to the participation of one or more appointees.  The objection must state the party's grounds for believing an appointee would be affected by a conflict of interest or by bias for or against complainants or respondents generally or an individual complainant or respondent specifically.[9]  The Chair and Secretary will decide whether an objection is justified.  If a successful objection to the participation of an appointee is raised, the Secretary will make a new appointment, and the parties will have an opportunity to object to the person selected as a replacement.[10]

The appointees will receive a copy of the complaint and must withdraw from the proceeding if their relationship to the complainant or the respondent or other circumstances lead them to believe that they have a conflict of interest or bias or if requested to withdraw by the Chair.

## 4.6    Rules that apply throughout a Title IX sexual misconduct proceeding under Section 4

In addition to those procedural rules discussed elsewhere in these procedures, the following rules apply throughout a Title IX sexual misconduct proceeding under Section 4:

---

[7] The panel members will be faculty or staff members, except, if the respondent is a student, one member of the panel may be a graduate or professional student.  Collectively, the hearing officer and the panel members are referred to as "the hearing panel."

[8] The Chair may not serve as appellate decision maker, unless a designee acted for the Chair at all stages of the proceeding following acceptance of the formal complaint.

[9] An appointee's past professional experience alone is not a proper basis for requesting the withdrawal of an appointee or for appealing a determination by a hearing panel under Section 4.10, below.

[10] For scheduling reasons, appointees, other than the investigator, may be appointed later in the process, but the parties will retain their right to object to the participation of all appointees as described in this section.

- At all times in a Title IX sexual misconduct proceeding, the burden of proof and the burden of gathering evidence sufficient to reach a determination regarding responsibility rests on Yale and not the parties.

- If a party is invited to attend an investigative interview, hearing, or other meeting, the UWC or the investigator will give the party written notice of the meeting, with sufficient time for the party to prepare to participate. The notice will include the date, time, location, and purpose of the meeting and the names of participants.

- The parties will have equal access to evidence, including inculpatory and exculpatory evidence, and an equal opportunity to present evidence and witnesses, including fact and expert witnesses.

- All relevant evidence – including both inculpatory and exculpatory evidence – must be objectively evaluated, and credibility determinations may not be based on a person's status as a complainant, respondent, or witness.

## 4.7    Investigation

The investigator will gather documents and conduct interviews as necessary to reach an understanding of the facts and circumstances surrounding the allegations of the complaint.[11, 12] The investigator will give both parties an equal opportunity to provide evidence and propose witnesses.  The investigator will also give both parties an equal opportunity to inspect and review any evidence obtained as part of the investigation that is directly related to the allegations raised in the complaint, so that each party can meaningfully respond to the evidence in writing prior to completion of the investigation report.  This requirement to disclose evidence includes evidence that Yale does not intend to rely on in reaching a determination regarding responsibility, and it includes inculpatory and exculpatory evidence, whether obtained from a party or another source.

The investigator will present a draft report to the Chair and Secretary.  After reviewing the report, the Chair or the Secretary may request clarifications and additional investigation. The Secretary will send a copy of the final investigation report to the parties and their advisors and inform them of their opportunity to submit a written response to the report and to provide a list of those witnesses included in the report whom they wish to appear at the hearing.  The parties' witness lists must describe the subject and relevance of the proposed witnesses' testimony.

---

[11] In the course of a Title IX sexual misconduct process, the university may not access, consider, disclose, or otherwise use a party's records that are made or maintained by a physician, psychiatrist, psychologist, or other recognized professional or paraprofessional acting in the professional's or paraprofessional's capacity, or assisting in that capacity, and which are made and maintained in connection with the provision of treatment to the party, unless the recipient obtains that party's voluntary, written consent to do so for the Title IX sexual misconduct proceeding.

[12] In complaints involving sexual violence, if the investigator or hearing panel plans to consider medical or laboratory evidence offered by a party, the Chair and the Secretary will decide whether the planned use of such evidence requires that it be accompanied by the opinion of a non-party witness with medical training.

The Secretary will provide the hearing panel with the complaint, the investigation report, the parties' responses to the investigation report, the parties' witness lists, a list of witnesses recommended by the investigator, and any evidence obtained as part of the investigation that is directly related to the allegations raised in the complaint. The hearing officer will determine which witnesses may be able to provide relevant testimony, and the Secretary will invite those witnesses to the hearing.

## 4.8    Hearing

The Secretary will schedule a hearing for no earlier than five days after the date for submission of the parties' responses to the investigation report.  Unless both parties ask to appear jointly, the complainant and the respondent will not appear jointly before the hearing panel at any stage of the hearing.  The party who is not before the hearing panel will be in a private room with audio and visual access to the proceedings.  Advisors will remain with the parties they are representing, unless asked to join the hearing panel during questioning.  Parties and witnesses may participate in a hearing by audio-visual link from a remote location.  A recording of the hearing will be made available to both parties.

The hearing officer will begin the hearing by explaining the substance of the complaint and the specific university policy or policies allegedly violated.  The hearing panel will then interview the parties and the witnesses, and each party's advisor will have an opportunity to question, orally and directly, the other party and the other party's witnesses.  The hearing officer will enforce the following rules:

- Under no circumstances may a party directly question another party or a witness.
- Advisors must treat all participants in the hearing with courtesy, which means, among other things, that they may not raise their voices, speak over another participant who holds the floor, badger witnesses, or ask questions that the hearing officer has determined were previously asked and answered.
- Advisors will be permitted to ask relevant questions and follow-up questions, including questions that challenge a witness's credibility.
- Before a complainant, respondent, or witness answers a question, the hearing officer will first determine whether the question is relevant and explain any decision to exclude a question as not relevant.[13]
- Questions and evidence about the complainant's sexual predisposition or prior sexual behavior are not relevant, unless such questions and evidence are offered to prove that someone other than the respondent committed the conduct alleged by the complainant, or if the questions and evidence concern specific incidents of the complainant's prior sexual behavior with respect to the respondent and are offered to address the issue of consent.

---

[13] At the hearing officer's discretion, the hearing officer may schedule a pre-hearing conference to discuss evidentiary issues with the parties and their advisors.

- Once the hearing officer has said that a decision regarding courtesy, relevance, or any other matter is final, an advisor may not challenge the decision at the hearing.
- With permission of the hearing officer, questioning may be paused at the witness's request.

Prior to the hearing, advisors must sign a statement agreeing to abide by the above rules.

If a party or witness does not submit to questioning by an advisor, the hearing panel may not rely on any statement by that party or witness in reaching a determination regarding responsibility.[14]  However, the hearing panel may not draw an inference regarding responsibility based solely on a party's or witness's absence from the hearing or refusal to answer questions.

## 4.9    Decision of the hearing panel

Following the hearing, the hearing panel will decide whether the respondent is responsible for the alleged Title IX sexual misconduct.  The standard of proof for each finding of fact and conclusion will be a preponderance of the evidence.  In determining responsibility, the hearing panel may consider a respondent's previous formal discipline for other acts of sexual misconduct, including written reprimands, and the respondent's criminal conviction arising out of the events complained of.  The hearing panel may not consider as evidence of responsibility previous accusations of other acts of sexual misconduct that did not result in formal discipline or the fact that a criminal investigation or prosecution is pending in relation to the events complained of.

If a party is found responsible, the hearing panel will consider whether to provide remedies and impose a penalty.  The Secretary will inform the hearing panel about the nature of previous remedies and penalties that Yale has applied in similar circumstances.  The Secretary will also describe any formal Yale discipline previously imposed on the respondent, and the hearing panel may consider this prior discipline in imposing a penalty in the current matter.

Remedies offered to complainants to restore equal access to Yale's programs and activities may include:

- counseling;
- extensions of deadlines or other course-related adjustments;
- modifications of work or class schedules;
- campus escorts;
- mutual restrictions on contact between the parties;

---

[14] The hearing panel may rely on a party or witness's description of the respondent's allegedly harassing language, even if the respondent does not submit to questioning.

- changes in work or housing locations;
- limitations on the respondent's access to Yale programs and activities, including removal of the respondent from campus; and
- increased security and monitoring of certain areas of the campus.

Persons found responsible for Title IX sexual misconduct may receive penalties ranging from a reprimand to expulsion from the university or termination of university employment, as discussed in applicable faculty, trainee, student, and staff policies and regulations.

All decisions of the hearing panel must be made by majority vote (three out of four), except a unanimous vote is required for a decision to impose a penalty of three or more terms of suspension, a penalty of expulsion, or a penalty of termination.  Abstentions are not permitted.

In consultation with the other hearing panel members, the hearing officer will prepare a written decision report that includes the following elements:

- the allegation potentially constituting Title IX sexual misconduct;
- a description of the procedural steps taken from the receipt of the complaint through the decision, including any notifications to the parties, interviews with parties and witnesses, site visits, methods used to gather other evidence, and hearings held;
- findings of fact supporting the decision;
- conclusions regarding the application of Yale's sexual misconduct policies to the facts;
- a statement of, and rationale for, the result as to each allegation, including a determination regarding responsibility;
- any penalty to be imposed on the respondent;
- any remedies designed to restore or preserve equal access to Yale's education programs or activities to be provided to the complainant; and
- the grounds and procedures for an appeal.

The hearing officer will send the decision report to the Secretary, who will send it simultaneously to each party.  The decision becomes final and discipline will go into effect either on the date that any appeal is decided or, if neither party brings an appeal, the date on which an appeal would no longer be considered timely.

## 4.10  Appeals

Either party may appeal a decision by the UWC regarding dismissal of a complaint or the hearing panel's decision regarding responsibility by sending a written appeal to the Secretary.  The only grounds for appeal are:

- a procedural irregularity that affected the outcome of the matter;
- the discovery of new evidence that was not reasonably available at the time the decision regarding responsibility or dismissal was made and that could affect the outcome of the matter; or
- a Title IX Coordinator, the Chair, the Secretary, the investigator, the hearing officer, or another panel member had a conflict of interest or bias for or against complainants or respondents, generally, or the individual complainant or respondent, specifically, that affected the outcome of the matter.

The Secretary will provide a copy of the appeal to the other party, who may send a written response to the Secretary.

The Secretary will send the appeal, any response to the appeal, and relevant investigation and hearing documents to the appellate decision maker, who will issue a written decision.  If the appeal of a dismissal is granted, the matter will be returned to the Secretary for further proceedings.  If the appeal of a decision on responsibility is granted, the matter will be returned to the hearing panel for reconsideration.[15]  In the appeal decision, the appellate decision maker may give the hearing panel instructions regarding the nature and extent of the reconsideration.  The hearing panel will promptly reconsider the matter and the hearing officer will issue a new decision report.  The appellate decision maker will review the new decision report for conformity with the appeal decision and will either approve the new decision or revise it.  The Secretary will send the approved or revised decision report simultaneously to both parties, and no further appeals are allowed.

## 4.11   Time Periods

The time periods in the table below apply to the review of a formal complaint under this Section.  The Chair may extend a time period for good cause, such as illness, holidays, the absence of parties or witnesses from campus, a concurrent criminal investigation, the complexity of the allegations, or the competing demands of other cases.  The parties will be informed in writing by the Secretary if a time period is extended.  All time periods include weekends and holidays but not Yale's winter recess.  Deadlines that fall on a weekend or holiday will be extended to the following weekday.

---

[15] If an appeal is granted because the hearing officer or another member of the hearing panel had a conflict of interest or bias, the Chair and the Secretary will appoint a replacement to reconsider the matter.

| PROCESS | TIME PERIOD |
|---------|-------------|
| Notice by the parties of their intention to use an attorney as an advisor | Must be received by the Secretary at least five days in advance of the first meeting that the advisor will attend |
| Chair's appointment of an investigator | Within seven days after the UWC accepts the complaint |
| Parties' written objections to appointees | Must be received by the Secretary within five days after parties receive notice of the appointees' names |
| The parties' response to the evidence gathered by the investigator | Must be received by the Secretary within 10 days after the parties receive the evidence |
| The Secretary sends the investigation report to the parties | Within 60 days after the investigator's appointment |
| The parties' witness list and response to the investigation report | Must be received by the Secretary within 10 days after the parties receive the investigation report |
| The first day of the hearing | No sooner than 15 days after the parties receive the investigation report |
| The Secretary sends the hearing panel's report to the parties | Within 14 days after the hearing |
| Appeal by either party | Must be received by the Secretary within seven days after the parties receive the hearing panel's report |
| Response to an appeal | Must be received by the Secretary within seven days after the opposing party's receipt of the appeal |
| Decision on appeal | Within 14 days after the appellate decision maker receives the appeals and any responses |

**5.      Formal Sexual Misconduct Proceedings that are not Subject to Federal Regulations**

Some types of sexual misconduct meet the definition of Title IX sexual misconduct, but federal Title IX regulations do not govern any resulting formal complaint because of the location of the alleged behavior or the status of one of the parties.[16]  Other types of sexual misconduct are not covered by federal regulations because they do not meet the definition of Title IX sexual misconduct.[17]  This section describes the procedures used for formal complaints of sexual misconduct when the alleged conduct would violate Yale policies but is not subject to federal regulations.

**5.1    Conditions for bringing a formal complaint of sexual misconduct under Section 5**

A current or former Yale faculty member,[18] trainee, student, or staff member[19] who has experienced sexual misconduct may bring a formal complaint to the UWC under Section 5, so long as these conditions are met:

- The alleged misconduct cannot be addressed under Section 4 above.
- The person accused of misconduct is a Yale faculty member, trainee, or student[20] at the time the complaint is filed.[21]
- The alleged misconduct occurred at a time when both the complainant and the respondent were Yale faculty members, trainees, students, or staff members.
- The alleged misconduct occurred on the Yale campus; at a Yale sponsored event; in another place, event, or circumstances over which Yale exercised substantial control; or in a space owned or controlled by a Yale student or Yale student group for use in connection with attendance at Yale.

---

[16] For example, proceedings related to sexual misconduct by a Yale student or faculty member while the parties were on a Yale program overseas would not be governed by federal regulations because the alleged behavior was not directed at a person within the United States.

[17] For example, Yale policy is intended to protect individuals from unwelcome sexual behavior that has the purpose or effect of unreasonably interfering with a person's work or academic performance, but only behavior that is both severe and pervasive meets the definition of Title IX sexual misconduct.

[18] In these procedures, the term "faculty member" should be understood to include any person teaching at Yale.

[19] For the purposes of Section 5, the term "staff member" includes all Yale employees except faculty members and student employees.

[20] A complaint against a graduating student must be brought no later than May 1 for spring graduates and no later than December 1 for fall graduates, unless the alleged misconduct occurred after the applicable date.

[21] If the Title IX Office and the UWC receive a complaint against a Yale staff member, and the complaint cannot be heard under Section 4, above, the complaint will be referred to the appropriate Human Resources process.

A person who is not a current or former Yale faculty member, trainee, student, or staff member may ask a Title IX Coordinator to bring a formal complaint to the UWC under Section 5, so long as these conditions are met:

- The alleged misconduct meets the definition of Title IX sexual misconduct but cannot be addressed under Section 4 above.
- The person accused of misconduct is a Yale faculty member, trainee, or student[22] at the time the complaint is filed.
- The alleged misconduct occurred at a time when the accused party was a Yale faculty member, trainee, or student.
- The alleged misconduct occurred on the Yale campus; at a Yale sponsored event; in another place, event, or circumstances over which Yale exercised substantial control; or in a space owned or controlled by a Yale student or Yale student group for use in connection with attendance at Yale.

## 5.2   Advisors

Parties may be accompanied by an advisor at any stage of a formal proceeding. An advisor may be anyone of the party's choosing, including an attorney.  The advisor can offer personal and moral support, before, during, and after a hearing, and help the party prepare for meetings related to a complaint. The advisor may not submit documents, either directly or indirectly, on a party's behalf at any stage of the proceeding, nor speak for the party during an interview with an investigator or during a formal hearing, except to request that a hearing officer ask follow-up questions. (See Sections 5.7 and 5.8, below.)

A party must provide the advisor's name and contact information to the UWC Secretary ("Secretary") prior to meeting with the investigator.  A party must also inform the Secretary if a new advisor is selected.  The Secretary will send the advisor copies of Confidential Documents (see Section 3.3, above), unless the party requests otherwise. A party wishing to bring an attorney as an advisor must inform the Secretary at least five days in advance of the first meeting that the advisor will attend.  Parties may have no more than one advisor with them at a meeting, including a hearing.

## 5.3   Initiating a formal complaint of sexual misconduct under Section 5

A person wishing to make a formal complaint of sexual misconduct under Section 5 must submit to a Title IX Coordinator and the Secretary a written complaint that is signed, sent electronically from the complainant's account, or otherwise authenticated.  The complaint must include the names of the parties involved in the incident, if known, a description of the conduct allegedly constituting sexual misconduct, and the date and location of the alleged

---

[22] A complaint against a graduating student must be brought no later than May 1 for spring graduates and no later than December 1 for fall graduates, unless the alleged misconduct occurred after the applicable date.

incident, if known.  The Secretary and the chair of the UWC ("the Chair")[23] will determine whether the complaint meets the conditions described in Section 5.1 above and whether it provides sufficient detail or must be supplemented.  If the complaint does not meet the conditions in Section 5.1 or must be supplemented, the Secretary will write to the complainant, explaining why the complaint cannot proceed and describing other options that the complainant may have for addressing the alleged misconduct.

If a complaint is accepted for further proceedings, the Secretary will send a written notice to both parties, with the following information:

- a copy of the complaint;
- a statement that the respondent is presumed not responsible for the alleged conduct and that a determination regarding responsibility will be made at the conclusion of the proceeding;
- a statement that the parties may have an advisor of their choice, who may be, but is not required to be, an attorney;
- a statement that the parties may inspect and review any evidence obtained as part of the investigation that is directly related to the allegations raised in the formal complaint, including (i) evidence upon which Yale does not intend to rely in reaching a determination regarding responsibility and (ii) inculpatory or exculpatory evidence, whether obtained from a party or other source;
- a statement that these procedures prohibit knowingly providing false information during the proceeding; and
- a copy of these procedures.

**All time periods governing the investigation, hearing, and appeal of a complaint are set out in Section 5.11, below.**

At any point before the submission of an investigation report, as discussed in Section 5.7 below, the UWC may consolidate complaints of sexual misconduct and other misconduct that have been made against more than one respondent, or by more than one complainant against one or more respondents, or by one party against the other party, so long as the allegations arise out of the same facts or circumstances.[24]  The decision to consolidate complaints will be made by the Secretary and the Chair.  If complaints are consolidated after the parties have received the initial notice of a proceeding, the Secretary will provide

---

[23] The Chair may designate another member of the committee to act in the Chair's place, and all references to the Chair should be understood as including the Chair's designee.

[24] Complex complaints may combine allegations of sexual misconduct and other offenses, and the UWC may not be the only university body with authority to hear a complaint. In such cases, the UWC will retain jurisdiction over all charges of sexual misconduct, and other charges will be heard according to the circumstances of each complaint. In some cases, for example, the UWC may hear all charges, and, in other cases, a different decision-making body may decide the charges that do not relate to sexual misconduct. In cases involving multiple types of allegations, the UWC Chair will consult with the official responsible for the other relevant body and, if necessary, the provost.

the parties with a revised notice.  The UWC will not accept a new complaint if it has already decided a complaint based on the same set of circumstances by the same complainant.

To the extent necessary to implement supportive measures, the Secretary will inform relevant Yale officials that a formal complaint has been filed. The Title IX Coordinator(s) designated by the UWC will coordinate appropriate supportive measures, and university officials are expected to cooperate in implementing those measures.

### 5.4     Dismissal or withdrawal of a complaint; alternative resolution

The Chair and the Secretary will consider dismissing a complaint if, at any point during a proceeding, information emerges indicating that the UWC did not have jurisdiction over the complaint under section 5.1 above. The Secretary will send the parties simultaneous written notice of the decision regarding dismissal, including the reasons for the decision.  If a case is dismissed under Section 5 but meets the requirements of Section 4, the case will be converted to a Section 4 proceeding, under conditions determined by the Chair and the Secretary.

The complainant may, at any time before the day scheduled for the hearing, request in writing to the Secretary that the complaint be withdrawn. The Chair and the Secretary will decide whether to agree to the request.  If the Chair and Secretary decide to hear a complaint despite a request for withdrawal, the complainant will not be required to participate in the proceeding.

At any point during a Section 5 proceeding, the parties may request or the UWC may offer an alternative resolution process, such as mediation or restorative justice.  See Section 2, above, for information on alternative resolution processes.

### 5.5     Appointment of investigators, hearing officers, other hearing panel members, and appellate decision makers

After accepting a complaint for a formal proceeding, the Secretary will appoint (i) an investigator to investigate the complaint; (ii) a hearing officer, trained as an attorney, to preside over the hearing of the complaint and participate in deciding the case; (iii) three UWC members to serve with the hearing officer on the hearing panel and participate in deciding the case;[25] and (iv) an appellate decision maker, who must be a tenured faculty member on the UWC[26] (collectively, "appointees").  The Secretary will send a written notice to the parties, providing the names of the appointees and informing the parties of their

---

[25] The panel members will be faculty or staff members, except, if the respondent is a student, one member of the panel may be a graduate or professional student.  Collectively, the hearing officer and the panel members are referred to as "the hearing panel."

[26] The Chair may not serve as appellate decision maker, unless a designee acted for the Chair at all stages of the proceeding following acceptance of the formal complaint.

opportunity to object to the participation of one or more appointees. The objection must state the party's grounds for believing an appointee would be affected by a conflict of interest or by bias for or against complainants or respondents, generally, or an individual complainant or respondent, specifically.[27] The Chair and Secretary will decide whether an objection is justified. If a successful objection to the participation of an appointee is raised, the Secretary will make a new appointment, and the parties will have an opportunity to object to the person selected as a replacement.[28]

The appointees will receive a copy of the complaint and must withdraw from the proceedings if their relationship to the complainant or the respondent or other circumstances lead them to believe that they have a conflict of interest or bias or if requested to withdraw by the Chair.

## 5.6    Rules that apply throughout a sexual misconduct proceeding under Section 5

In addition to those procedural rules discussed elsewhere in these procedures, the following rules apply throughout a sexual misconduct proceeding under Section 5:

- At all times, the burden of proof and the burden of gathering evidence sufficient to reach a determination regarding responsibility rests on Yale and not the parties.
- If a party is invited to or expected to attend an investigative interview, hearing, or other meeting, the UWC or the investigator will give the party written notice of the meeting, with sufficient time for the party to prepare to participate. The notice will include the date, time, location, and purpose of the meeting and the names of participants.
- The parties will have equal access to evidence, including inculpatory and exculpatory evidence, and an equal opportunity to present evidence and witnesses, including fact and expert witnesses.
- All relevant evidence – including both inculpatory and exculpatory evidence – must be objectively evaluated, and credibility determinations may not be based on a person's status as a complainant, respondent, or witness.

## 5.7    Investigation

The investigator will gather documents and conduct interviews as necessary to reach an understanding of the facts and circumstances surrounding the allegations of the

---

[27] An appointee's past professional experience alone is not a proper basis for requesting the withdrawal of an appointee or for appealing a determination by a hearing panel under Section 5.10, below.

[28] For scheduling reasons, appointees, other than the investigator, may be appointed later in the process, but the parties will retain their right to object to the participation of all appointees as described in this section.

complaint.[29, 30] The investigator will give both parties an equal opportunity to provide evidence and propose witnesses.  The investigator will also give both parties an equal opportunity to inspect and review any evidence obtained as part of the investigation that is directly related to the allegations raised in the complaint, so that each party can meaningfully respond to the evidence in writing prior to completion of the investigation report.  This requirement to disclose evidence includes evidence that Yale does not intend to rely on in reaching a determination regarding responsibility, and it includes inculpatory and exculpatory evidence, whether obtained from a party or another source.

The investigator will present a draft report to the Chair and Secretary.  After reviewing the report, the Chair or the Secretary may request clarifications and additional investigation. The Secretary will send a copy of the final investigation report to the parties and their advisors and inform them of their opportunity to submit a written response to the report and to provide a list of those witnesses included in the report whom they wish to appear at the hearing.  The parties' witness lists must describe the subject and relevance of the proposed witnesses' testimony.

The Secretary will provide the hearing panel with the complaint, the investigation report, the parties' responses to the investigation report, the parties' witness lists, a list of witnesses recommended by the investigator, and any evidence obtained as part of the investigation that is directly related to the allegations raised in the complaint. The hearing officer will determine which witnesses may be able to provide relevant testimony that was not conveyed to the investigator, and the Secretary will invite those witnesses to the hearing.

## 5.8    Hearing

The Secretary will schedule a hearing for no earlier than five days after the date for submission of the parties' responses to the investigation report.  Unless both parties ask to appear jointly, the complainant and the respondent will not appear jointly before the hearing panel at any stage of the hearing.  The party who is not before the hearing panel will be in a private room with audio and visual access to the proceedings.  Advisors will remain with the parties they are representing, unless asked to join the hearing panel during questioning.  Parties and witnesses may participate in a hearing by audio-visual link from a remote location. A recording of the hearing will be made available to both parties.

---

[29] In the course of a sexual misconduct proceeding under Section 5, the university may not access, consider, disclose, or otherwise use a party's records that are made or maintained by a physician, psychiatrist, psychologist, or other recognized professional or paraprofessional acting in the professional's or paraprofessional's capacity, or assisting in that capacity, and which are made and maintained in connection with the provision of treatment to the party, unless the recipient obtains that party's voluntary, written consent to do so for the sexual misconduct proceeding.

[30] In complaints involving sexual violence, if the investigator or hearing panel plans to consider medical or laboratory evidence offered by a party, the Chair and the Secretary will decide whether the planned use of such evidence requires that it be accompanied by the opinion of a non-party witness with medical training.

The hearing officer will begin the hearing by explaining the substance of the complaint and the specific University policy or policies allegedly violated.  The hearing panel will then interview the parties and the witnesses, and each party may submit a list of written questions for the hearing officer to ask the other party or a witness.  The advisor for the questioning party may request that the hearing officer ask follow-up questions.  The hearing officer will exclude any question that the hearing officer decides is not relevant.  The hearing officer will explain a decision to exclude a question, and the hearing officer's decision is final.  Questions and evidence about the complainant's sexual predisposition or prior sexual behavior are not relevant, unless such questions and evidence are offered to prove that someone other than the respondent committed the conduct alleged by the complainant, or if the questions and evidence concern specific incidents of the complainant's prior sexual behavior with respect to the respondent and are offered to address the issue of consent.  Under no circumstances may a party directly question another party or a witness.

### 5.9    Decision of the hearing panel

Following the hearing, the hearing panel will decide whether the respondent is responsible for the alleged sexual misconduct.  The standard of proof for each finding of fact and conclusion will be a preponderance of the evidence.  In determining responsibility, the hearing panel may consider a respondent's previous formal discipline for other acts of sexual misconduct, including written reprimands, and the respondent's criminal conviction arising out of the events complained of.  The hearing panel may not consider as evidence of responsibility previous accusations of other acts of sexual misconduct that did not result in formal discipline or the fact that a criminal investigation or prosecution is pending in relation to the events complained of.

If a party is found responsible, the hearing panel will consider whether to provide remedies and impose a penalty.  The Secretary will inform the hearing panel about the nature of previous remedies and penalties that Yale has applied in similar circumstances.  The Secretary will also describe any formal Yale discipline previously imposed on the respondent, and the hearing panel may consider this prior discipline in imposing a penalty in the current matter.

Remedies offered to complainants in order to restore equal access to Yale's programs and activities may include:

- counseling;
- extensions of deadlines or other course-related adjustments;
- modifications of work or class schedules;
- campus escorts;
- mutual restrictions on contact between the parties;
- changes in work or housing locations;

- limitations on the respondent's access to Yale programs and activities, including removal of the respondent from campus; and
- increased security and monitoring of certain areas of the campus.

Persons found responsible for sexual misconduct under Section 5 may receive penalties ranging from a reprimand to expulsion from the university or termination of university employment, as discussed in applicable faculty, trainee, student, and staff policies and regulations.

All decisions of the hearing panel must be made by majority vote (three out of four), except a unanimous vote is required for a decision to impose a penalty of three or more terms of suspension, a penalty of expulsion, or a penalty of termination.  Abstentions are not permitted.

In consultation with the panel members, the hearing officer will prepare a written decision report that includes the following elements:

- the allegation potentially constituting sexual misconduct;
- a description of the procedural steps taken from the receipt of the complaint through the decision, including any notifications to the parties, interviews with parties and witnesses, site visits, methods used to gather other evidence, and hearings held;
- findings of fact supporting the decision;
- conclusions regarding the application of Yale's sexual misconduct policies to the facts;
- a statement of, and rationale for, the result as to each allegation, including a determination regarding responsibility;
- any penalty to be imposed on the respondent;
- any remedies designed to restore or preserve equal access to Yale's education programs or activities to be provided to the complainant; and
- the grounds and procedures for an appeal.

The hearing officer will send the decision report to the Secretary, who will send it simultaneously to each party.  The decision becomes final and discipline will go into effect either on the date that any appeal is decided or, if neither party brings an appeal, the date on which an appeal would no longer be considered timely.

## 5.10   Appeals

Either party may appeal a decision by the UWC regarding dismissal of a complaint or the hearing panel's decision regarding responsibility by sending a written appeal to the Secretary.  The only grounds for appeal are:

- a procedural irregularity that affected the outcome of the matter;
- the discovery of new evidence that was not reasonably available at the time the decision regarding responsibility or dismissal was made and that could affect the outcome of the matter; or
- a Title IX Coordinator, the Chair, the Secretary, the investigator, the hearing officer, or another hearing panel member had a conflict of interest or bias for or against complainants or respondents, generally, or the individual complainant or respondent, specifically, that affected the outcome of the matter.

The Secretary will provide a copy of the appeal to the other party, who may send a written response to the Secretary.

The Secretary will send the appeal, any response to the appeal, and relevant investigation and hearing documents to the appellate decision maker, who will issue a written decision.  If the appeal of a dismissal is granted, the matter will be returned to the Secretary for further proceedings.  If the appeal of a decision on responsibility is granted, the matter will be returned to the hearing panel for reconsideration.[31]  In the appeal decision, the appellate decision maker may give the hearing panel instructions regarding the nature and extent of the reconsideration.  The hearing panel will promptly reconsider the matter and the hearing officer will issue a new decision report.  The appellate decision maker will review the new decision for conformity with the appeal decision and will either approve the new decision or revise it.  The Secretary will send the approved or revised decision report simultaneously to both parties, and no further appeals are allowed.

## 5.11   Time Periods

The time periods in the table below apply to the review of a formal complaint under this Section.  The Secretary may extend a time period for good cause such as illness, holidays, the absence of parties or witnesses from campus, a concurrent criminal investigation, the complexity of the allegations, or the competing demands of other cases.  The parties will be informed in writing by the Secretary if a time period is extended.  All time periods include weekends and holidays but not Yale's winter recess.  Deadlines that fall on a weekend or holiday will be extended to the following weekday.

---

[31] If an appeal is granted because the hearing officer or another member of the hearing panel had a conflict of interest or bias, the Chair and the Secretary will appoint a replacement to reconsider the matter.

| PROCESS | TIME PERIOD |
|---|---|
| Notice by the parties of their intention to use an attorney as an advisor | Must be received by the Secretary at least five days in advance of the first meeting that the advisor will attend |
| Chair's appointment of an investigator | Within seven days after the UWC accepts the complaint |
| Parties' written objections to appointees | Must be received by the Secretary within five days after parties receive notice of the appointees' names |
| The parties' response to the evidence gathered by the investigator | Must be received by the Secretary within 10 days after the parties receive the evidence |
| The Secretary sends the investigation report to the parties | Within 60 days after the investigator's appointment |
| The parties' witness list and response to the investigation report | Must be received by the Secretary within 10 days after the parties receive the investigation report |
| The first day of the hearing | No sooner than 15 days after the parties receive the investigation report |
| The Secretary sends the hearing panel's report to the parties | Within 14 days after the hearing |
| Appeal by either party | Must be received by the Secretary within seven days after the parties receive the hearing panel's report |
| Response to an appeal | Must be received by the Secretary within seven days after the opposing party's receipt of the appeal |
| Decision on appeal | Within 14 days after the appellate decision maker receives the appeals and any responses |