# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| SIERRA STUBBS and GAVIN JACKSON, | |
| Plaintiffs, | CASE NO: 3:21-CV-01525-SALM |
| v. | |
| HEATHER GERKEN, ET AL., | |
| Defendants. | April 1, 2022 |

## DEFENDANTS' RENEWED MOTION TO STAY DISCOVERY
### PENDING RESOLUTION OF MOTION TO DISMISS

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................ ii

INTRODUCTION ................................................................................................... 1

LEGAL STANDARD .............................................................................................. 4

ARGUMENT ....................................................................................................... 6

    I.   Yale's Motion to Dismiss Raises Substantial Grounds for Dismissal. ............................ 6

        A.  Breach of Contract ................................................................................. 6

        B.  Promissory Estoppel .............................................................................. 7

        C.  Unreasonable Publicity and False Light ....................................................... 8

        D.  IIED ................................................................................................ 9

        E.  Tortious Interference with Business Relationships ........................................ 10

        F.  Defamation ....................................................................................... 11

    II.  The Breadth and Burden of Discovery Weigh in Favor of a Stay. ............................. 12

    III.  Plaintiffs Would Not Be Prejudiced by a Brief Stay. ........................................ 14

CONCLUSION ................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alleva v. Stamford Health Grp.*,
2019 WL 3248816 (Conn. Super. June 6, 2019) .......................................................9

*United States ex rel. Ameti v. Sikorsky Aircraft Corp.*,
2016 WL 10490528 (D. Conn. Nov. 28, 2016) .........................................................6

*Appleton v. Bd. of Educ.*,
757 A.2d 1059 (Conn. 2000) .....................................................................................9

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007).....................................................................................................5

*Berry v. Zalon*,
2018 WL 1749970 (Conn. Super. Mar. 8, 2018) ....................................................8

*Callahan v. Callahan*,
2017 WL 3332743 (Conn. Super. June 27, 2017) ...................................................10

*Clinton v. Jones*,
520 U.S. 681 (1997).....................................................................................................4

*Country Club of Fairfield, Inc. v. New Hampshire Ins. Co.*,
2014 WL 3895923 (D. Conn. Aug. 8, 2014) ...........................................................6

*Cuartero v. United States*,
2006 WL 3190521 (D. Conn. Nov. 1, 2006) .......................................................6, 15

*Dietz v. Bouldin*,
579 U.S. 40 (2016)......................................................................................................4

*Doe v. Danbury Hosp.*,
2021 WL 402055 (Conn. Super. Jan. 12, 2021) ....................................................12

*DSM Desotech Inc. v. 3D Sys. Corp.*,
2008 WL 4812440 (N.D. Ill. Oct. 28, 2008)...........................................................15

*In re First Constitution Shareholders Litig.*,
145 F.R.D. 291 (D. Conn. 1991)..............................................................................15

*Garfinkle v. Jewish Family Serv. of Greater Hartford, Inc.*,
2020 WL 8264101 (Conn Super. Dec. 15, 2020) ....................................................9

*Hi-Ho Tower, Inc. v. Com-Tronics, Inc.*,
761 A.2d 1268 (Conn. 2000) ...................................................................................10

ii

*ITT Corp. v. Travelers Cas. & Surety Co.*,
   2012 WL 2944357 (D. Conn. July 18, 2012) ................................................................4, 6, 12

*Johnson v. Schmitz*,
   119 F. Supp. 2d 90 (D. Conn. 2000)......................................................................................11

*Kalra v. Adler Pollock & Sheehan, P.C.*,
   3:18-CV-00260, ECF No. 132 (D. Conn. Jan. 25, 2021) (attached as Ex. B) ......................13

*Kalra v. Adler Pollock & Sheehan P.C.*,
   3:18-cv-00260, ECF No. 83 (D. Conn. Apr. 26, 2020) ....................................................12, 13

*Kalra v. Adler Pollock & Sheehan P.C.*,
   3:18-cv-00260, ECF No. 61 (D. Conn. Jan. 21, 2020) ..........................................................13

*Kalra v. Adler Pollock & Sheehan P.C.*,
   3:18-cv-00260, ECF No. 91 (D. Conn. May 21, 2020) ..........................................................13

*Kalra v. Adler Pollock & Sheehan, P.C.*,
   3:20-cv-1393, ECF No. 28 (D. Conn. Mar. 16, 2021) (attached as Ex. A) ..........................4, 6

*Lee v. Yale Univ.*,
   3:21-cv-00389-SALM, ECF No. 39 (D. Conn. Dec. 22, 2021).................................................5

*Lee v. Yale Univ.*,
   3:21-cv-00389-SALM, ECF No. 26 (D. Conn. Aug. 10, 2021) ................................................5

*Louis Vuitton Malletier S.A. v. LY USA, Inc.*,
   676 F.3d 83 (2d Cir. 2012)..............................................................................................4, 12

*Miller Auto. Corp. v. Jaguar Land Rover N. Am., L.L.C.*,
   2010 WL 3260028 (D. Conn. Aug. 12, 2010) ....................................................................7, 8

*NetScout Sys., Inc. v. Gartner, Inc.*,
   223 A.3d 37 (Conn. 2020) ....................................................................................................11

*Nowacki v. Town of New Canaan*,
   2017 WL 11441480 (D. Conn. Jan. 5, 2017)......................................................................4, 6

*Pro Music Rights, LLC v. Apple Inc.*,
   3:20-cv-00309, ECF No. 164 (D. Conn. Sept. 2, 2020) ...................................................4, 5, 6

*Saliga v. Chemtura Corp.*,
   2015 WL 5822589 (D. Conn. Oct. 1, 2015) ...........................................................................9

*Sanchez v. Homestead Funding Corp. et al*,
   3:13-cv-01850, ECF No. 30 (D. Conn. May 5, 2014) .............................................................5

*Traylor v. Parker*,
  2016 WL 5003981 (Conn. Super. Aug. 4, 2016) ................................................................. 11

**Rules and Other Authorities**

 Federal Rules of Civil Procedure Rule 26(c) .................................................................. 4

Law student received Coker fellowship, undermining case against Law School -
  Yale Daily News ................................................................................................................ 1

Restatement (Second) of Torts § 652D cmt. a ................................................................ 8

Restatement (Second) of Torts § 652D cmt. b ................................................................ 9

## INTRODUCTION

Yale Law School ("YLS") students Sierra Stubbs and Gavin Jackson have sued YLS officials Heather Gerken, Ellen Cosgrove, and Yaseen Eldik, as well as Yale University, over harms Plaintiffs allegedly suffered after another YLS student distributed a document (called a "dossier") that circulated throughout YLS and was reported on by the national media and legal blogosphere. The "dossier" purportedly chronicles meetings that Plaintiffs had with a YLS professor, Amy Chua, in contravention of restrictions that she had agreed upon with YLS. Plaintiffs allege that when they complained to Cosgrove and Eldik about the third student's compilation and dissemination of the document, they were pressured to confirm that the allegations about Chua in the document were true. *See* Second Am. Compl. ("SAC") ¶¶ 54–55. Plaintiffs further allege that Cosgrove and Eldik warned them about professional repercussions for not confirming the document's allegations, and that Cosgrove and Gerken shared a marked-up version of the widely-disseminated document with a professor (the "Professor") who was considering hiring them as teaching assistants, discouraging him from hiring them. *Id*. ¶¶ 59–60, 70–72. They claim they "lost" the teaching assistant jobs as a result. *Id*. ¶ 97.[1]

Plaintiffs argue that this alleged course of events supports seven causes of action: (1) a breach of contract claim based on a non-retaliation policy in a university handbook (the "Handbook"), *id*. ¶¶ 84–88; (2) a promissory estoppel claim regarding the same alleged retaliation, *id*. ¶¶ 89–92; (3) an intentional interference with prospective business relationship

---

[1] Public press accounts relate that Plaintiffs' lead counsel has backtracked on his claims, acknowledging that at least one of the Plaintiffs received an offer to serve as a teaching assistant but declined to do so and instead chose to take a leave of absence. *See* Law student received Coker fellowship, undermining case against Law School - Yale Daily News (Attorney John "Balestriere explained that the damages do not refer simply to the awarding of the [teaching assistant position], but rather to the fact that his client took a leave of absence from the Law School as a result of this incident — and therefore did not undertake the fellowship.").

claim, alleging that their potential employment with all YLS professors and all U.S. judges has been undermined, *id.* ¶¶ 93–97; (4) a defamation claim (based partly on Gerken and Cosgrove sharing the widely-available document with a single professor, and partly on an uninvolved YLS professor describing the lawsuit as frivolous after seeing media reports about it), *id.* ¶¶ 98–106; (5) an unreasonable publicity claim arising from sharing the document with the Professor, *id.* ¶¶ 107–110; (6) a false light claim based on the same meeting with the one Professor, *id.* ¶¶ 111–14; and (7) an intentional infliction of emotional distress ("IIED") claim, *id.* ¶¶ 115–19.

On January 19, 2022, Plaintiffs filed their Second Amended Complaint, ECF No. 30, and several hours later, the parties filed their Joint Report of their Rule 26(f) Planning Meeting, ECF No. 31. This report outlines nearly a year of anticipated discovery, ranging from written discovery (including the production of emails and text messages) the depositions of up to twenty fact witness, and expert reports and depositions, among other things. ECF No. 31 at 6–9. On January 21, 2022, the Court issued a Scheduling Order and Case Management Plan, ECF No. 32 ("Scheduling Order"), which set out a discovery schedule for the case. On January 26, 2022, Defendants filed a corrected motion to stay discovery of their then-anticipated motion to dismiss the Second Amended Complaint. ECF No. 34. On January 27, 2022, the Court denied the motion as premature, without prejudice to refiling, because "[t]he Court is unable to evaluate the merits of the motion to stay without the benefit of the motion to dismiss and any responses thereto." ECF No. 35. After the parties exchanged affirmative disclosures under Rule 26(a) on the schedule set by the Court, Defendants filed their motion to dismiss ("MTD") on February 14, 2022, ECF No. 36, Plaintiffs filed their opposition on March 17, 2022, ECF No. 40 ("Opp."), and Defendants filed their reply brief on March 31, 2022, ECF No. 44 ("Reply").

Under the Scheduling Order, discovery began on February 14, 2022. So far, the parties have exchanged affirmative disclosures but done nothing further while the motion to dismiss was being briefed. In accord with ECF No. 35, Defendants waited until the motion to dismiss was fully briefed to renew their motion to stay discovery. But absent a stay, discovery will significantly intensify, as the current schedule requires the parties to propound all fact documentary discovery demands (including document requests, interrogatories, and requests for admission) by April 15, 2022—two weeks from now. ECF No. 32 at 2. In an effort to avoid the potentially unnecessary expense to both parties of drafting the documentary discovery demands—or the much greater expense of responding to them—Defendants now renew their motion to stay discovery until the resolution of their fully-briefed motion to dismiss.

Each of the three relevant factors supports a stay. First, while a stay does not require the Court to predict its ultimate resolution of the motion to dismiss, the arguments in favor of dismissal here are at a minimum substantial and well founded. Second, a stay would preserve resources, particularly where, as here, discovery would require substantial document production and numerous depositions—and would involve counsel for Plaintiffs who represented litigants sanctioned for "egregious" discovery abuses for conduct occurring on his watch. Third, a presumably short stay of discovery would not prejudice Plaintiffs. Defendants have preserved relevant documents and are prepared to begin discovery quickly and complete it promptly if the motion to dismiss is denied. The Court should thus pause discovery in this case until it determines whether the Plaintiffs have pleaded any cognizable claims in their Second Amended Complaint.

## LEGAL STANDARD

District courts have "considerable discretion" under Rule 26(c) of the Federal Rules of Civil Procedure to stay discovery for good cause. *Nowacki v. Town of New Canaan*, 2017 WL 11441480, at *1 (D. Conn. Jan. 5, 2017); *ITT Corp. v. Travelers Cas. & Surety Co.*, 2012 WL 2944357, at *2 (D. Conn. July 18, 2012) (stay of discovery under Rule 26(c) "'is committed to the sound discretion of the court based on a showing of good cause.'").[2] The Court also has the inherent authority—and broad discretion—to stay proceedings "to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants." *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 96 (2d Cir. 2012); *accord Clinton v. Jones*, 520 U.S. 681, 706 (1997) ("[T]he District Court has broad discretion to stay proceedings as an incident to its power to control its own docket."); *see also Dietz v. Bouldin*, 579 U.S. 40, 47 (2016) ("[D]istrict courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases.")

While the District of Connecticut Standing Order on Civil Cases notes that filing a motion to dismiss does not *automatically* stay discovery (as it does in some other districts), judges in the District of Connecticut issue discovery stays where appropriate, "to avoid potentially expensive and wasteful discovery during the pendency of a determination which could potentially reshape pending claims." *ITT Corp.*, 2012 WL 2944357, at *2; *see also, e.g., Kalra v. Adler Pollock & Sheehan, P.C.*, 3:20-cv-1393 (KAD), ECF No. 28 (D. Conn. Mar. 16, 2021) (attached as Ex. A) at 11 (staying discovery "pending resolution of Defendants' motion to dismiss"); *Pro Music Rights, LLC v. Apple Inc.*, 3:20-cv-00309 (JAM), ECF No. 164 (D. Conn.

---

[2] Throughout this brief, emphasis is added and internal quotation marks, citations, alterations, ellipses, and brackets are omitted unless otherwise indicated.

4

Sept. 2, 2020) (staying discovery pending motion to dismiss where motion raised substantial legal arguments and discovery sought would likely be expansive); *Sanchez v. Homestead Funding Corp. et al*, 3:13-cv-01850 (MPS), ECF No. 30 (D. Conn. May 5, 2014).  Indeed, in a recent case brought by a former faculty member against Yale that likewise attracted widespread press attention (and which, likewise, some observers speculated was motivated by the desire to attract such press attention), Judge Shea granted a motion to stay discovery pending resolution of a motion to dismiss. *Lee v. Yale Univ.*, 3:21-cv-00389-SALM, ECF No. 26 (D. Conn. Aug. 10, 2021) ("The [21] motion to stay discovery pending the Court's ruling on the motion to dismiss is hereby GRANTED. Should the Court deny the motion to dismiss (in whole or in part), the parties shall file a revised Rule 26(f) Report within 14 days of the Court's ruling.").[3]

Moreover, the Court's discretion to limit discovery until deciding a motion to dismiss accords with binding precedent construing Rule 12(b)(6)'s pleading standard. In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court expressed the concern that, without rigorous scrutiny of the viability of a plaintiff's allegations on a Rule 12(b)(6) motion, "a plaintiff with a largely groundless claim [may] be allowed to take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value." *Id.* at 558. By making clear that Rule 12 required a plaintiff to meet a meaningful standard for stating a claim, the Supreme Court "hope[d] to avoid the potentially enormous expense of discovery" in cases that warrant dismissal. *Id.* at 559.

To determine whether a stay of discovery is appropriate when a motion to dismiss is pending, courts consider: (1) whether there are substantial grounds for dismissal raised by the

---

[3] That case was recently transferred to this Court. *See Lee v. Yale Univ.,* 3:21-cv-00389-SALM, ECF No. 39 (D. Conn. Dec. 22, 2021).

motion; (2) the breadth of discovery sought and the burden of responding to it; and (3) the risk of

unfair prejudice to the party opposing the stay. *E.g.*, *Kalra*, 3:20-cv-1393 (KAD), ECF No. 28

(D. Conn. Mar. 16, 2021) at 3–4; *Pro Music Rights, LLC*, 3:20-cv-00309 (JAM), ECF No. 164;

*United States ex rel. Ameti v. Sikorsky Aircraft Corp.*, 2016 WL 10490528, at *1–2 (D. Conn.

Nov. 28, 2016); *Country Club of Fairfield, Inc. v. New Hampshire Ins. Co.*, 2014 WL 3895923,

at *3 (D. Conn. Aug. 8, 2014); *accord, e.g.*, *Nowacki*, 2017 WL 11441480, at *1; *ITT Corp.*,

2012 WL 2944357, at *2. Here, all three factors weigh in favor of a stay.

## ARGUMENT

### I.  Yale's Motion to Dismiss Raises Substantial Grounds for Dismissal.

The Court need not "predict the outcome of [Yale's] motion to dismiss" to grant a stay. A

stay of discovery is appropriate where the arguments in favor of dismissal are "substantial and

not unfounded in the law." *ITT Corp.*, 2012 WL 2944357, at *3; *accord, e.g.*, *Cuartero v. United

States*, 2006 WL 3190521, at *2 (D. Conn. Nov. 1, 2006). The arguments in the Defendants'

motion to dismiss are well-founded and substantial.

#### A.  Breach of Contract

Plaintiffs allege Defendants breached a contract to which all Yale University students are

parties, the Yale Policy Against Discrimination and Harassment (the "Policy"), by retaliating

against them in violation of the Policy's prohibition against retaliation. *See* SAC ¶¶ 9, 73, 85–

88.  Defendants have raised several well-founded and substantial reasons for dismissal of this

claim.

First, the contract that Plaintiffs allege Defendants breached was not in effect when the

breach allegedly occurred. *See* MTD at 11. Second, under the Policy's terms, retaliation is

prohibited only if it relates to a report, complaint or investigation concerning discrimination or

harassment based on a defined set of "protected characteristics," such as race, sex, religion, or sexual orientation. *See* MTD at 11–14, Reply at 3–4. Plaintiffs do not allege retaliation against them for reporting harassment (or discrimination) based on any such protected characteristics. The harassment they allege arose from a fellow student's creation and dissemination of a "dossier" about them, which he did because he believed the Plaintiffs were attending dinner parties at Professor Amy Chua's house in violation of an agreement she had entered with Yale, unrelated to the Plaintiffs' status as members of any protected class. *See* SAC ¶¶ 53, 57, 65-66, 75, 91; MTD at 13–14; Reply at 4–5. And third, Plaintiffs do not allege they were retaliated against for reporting a concern, filing a complaint, or participating in an investigation into harassment of any kind: they allege they were retaliated against for refusing to make a statement detrimental to Professor Chua, conduct that is similarly not covered by the Policy. *See* MTD at 14–16. Finally, while Plaintiffs argue that oral promises and university customs sustain their claim even if the Policy does not, they have not alleged (a) any relevant oral statement Defendants made or (b) any relevant university custom (which cannot, by itself, constitute a contract). Reply at 5–6.

B.   <u>Promissory Estoppel</u>

Defendants have likewise raised well-founded and substantial reasons for dismissal of the promissory estoppel claim. The promissory estoppel claim fails because it impermissibly duplicates Plaintiffs' breach of contract claim. A claim for promissory estoppel can survive only when there is no written contract." MTD at 17 (quoting *Miller Auto. Corp. v. Jaguar Land Rover N. Am., L.L.C.*, 2010 WL 3260028, at *8 (D. Conn. Aug. 12, 2010)). Promissory estoppel "is an action outside the contract" and "[w]hen an enforceable contract does exist, the parties cannot assert a claim for promissory estoppel based on alleged promises that contradict the

written contract." *Miller Auto.*, 2010 WL 3260028, at *8. Plaintiffs do not allege any promise

was made to them other than the written terms of the Policy, so their promissory estoppel claim

cannot survive. To the contrary, their promissory estoppel claim explicitly incorporates their

claim that a contract exists. MTD at 18–19; Reply at 6.

      C.    <u>Unreasonable Publicity and False Light</u>

      Plaintiffs base their unreasonable publicity and false light claims on the allegation that

two of the Defendants, Gerken and Cosgrove, shared a marked-up version of the student-created

document with the Professor. *See* SAC ¶ 72. Defendants have also provided well-founded and

substantial reasons for dismissal of those claims.

      First, both claims fail because Plaintiffs do not allege Defendants shared the "dossier"

with more than one person, and "it is not an invasion of the right of privacy to communicate a

fact concerning the plaintiff's private life to a single person or even to a small group of persons."

*See Berry v. Zalon*, 2018 WL 1749970, at *4 (Conn. Super. Mar. 8, 2018) (quoting Restatement

(Second) of Torts § 652D cmt. a); MTD 28–30.  In their opposition to the motion to dismiss,

Plaintiffs belatedly contend that they alleged broad public dissemination of the "dossier" by the

Defendants, but their allegations do not support that contention, and they point only to a vague

introductory paragraph that previews a subsequent paragraph alleging the sharing of the

"dossier" with one person. Reply at 9. Moreover, that introductory paragraph lacks the necessary

factual amplification and fails to meet the *Iqbal/Twombly* standard necessary to survive a motion

to dismiss. *See id.*

      Second, Plaintiffs' unreasonable publicity claim fails because the contents of the

"dossier" were no longer private when Defendants allegedly disseminated them, and "there is no

liability when the defendant merely gives further publicity to information about the plaintiff that

is already public." *See* Restatement (Second) of Torts § 652D cmt. b.  Only after the dossier was already circulating widely at Yale did two of the Defendants allegedly share it with a single professor. *See* MTD at 30–31. Finally, this claim also fails because the contents of the "dossier" have attracted great public interest, MTD 31–32, an argument Plaintiffs failed to rebut. Reply at 9.

      D.    <u>IIED</u>

Substantial and well-founded reasons for dismissal of Plaintiffs' IIED claim have also been presented. First, an IIED claim requires allegations that Defendants engaged in "extreme and outrageous" conduct.  *See Appleton v. Bd. of Educ.*, 757 A.2d 1059, 1062 (Conn. 2000).  But courts "interpret[] the extreme and outrageous requirement strictly," *Saliga v. Chemtura Corp.*, 2015 WL 5822589, at *21 (D. Conn. Oct. 1, 2015), and to successfully allege "extreme and outrageous conduct" is to surmount "a high and sometimes seemingly insurmountable hurdle," *Alleva v. Stamford Health Grp.*, 2019 WL 3248816, at *3 (Conn. Super. June 6, 2019). Allegations that law school deans shared a marked-up version of a student-created document with a professor because they "believed" it showed that the students had not been candid, *see* SAC ¶¶ 72, 116, do not clear this exceedingly high bar*, see* MTD at 33–35; Reply at 9–10. Indeed, even attempts to "destroy [a person's] professional reputation and career" in a manner far more insidious than Plaintiffs allege here are not "extreme and outrageous" for purposes of this claim.  *See, e.g., Garfinkle v. Jewish Family Serv. of Greater Hartford, Inc.*, 2020 WL 8264101, at *6 (Conn Super. Dec. 15, 2020).

Second, an IIED claim requires allegations that Plaintiffs suffered "severe" emotional distress. *See Appleton*, 757 A.2d at 1062. But Plaintiffs have not met this requirement either, as

they have not alleged that they either were treated for it *or* have suffered from it for an extended period. *See* MTD at 35–36; Reply at 10.

     E.    <u>Tortious Interference with Business Relationships</u>

     Defendants have raised well-founded and substantial reasons for dismissal of this claim. A plaintiff alleging tortious interference must plead and prove "(1) a business relationship between the plaintiff and another party; (2) the defendant's intentional interference with the business relationship while knowing of the relationship; and (3) as a result of the interference, the plaintiff suffers actual loss." *See Hi-Ho Tower, Inc. v. Com-Tronics, Inc.*, 761 A.2d 1268, 1273 (Conn. 2000).

     Plaintiffs do not plead that Defendants interfered with a specific relationship they had with anyone other than the Professor. *See* MTD at 19–21; Reply at 6. Their allegation that they had a "prospective relationship" with YLS "professors and [all federal] judges' chambers around the country," SAC ¶ 94, is pure speculation. Reply at 6. "Simply put [Plaintiffs] cannot establish a claim for tortious interference with a business expectancy with a third party that they cannot identify." *Callahan v. Callahan*, 2017 WL 3332743, at *2 (Conn. Super. June 27, 2017); *see* MTD at 19–21; Reply at 6–7.

     Nor have Plaintiffs plausibly alleged actual loss. *See* MTD at 21–22, Reply at 7. While they broadly allege that they "lost" Coker fellowships, they don't allege that any professor denied their Coker applications, or that they even applied. MTD at 21; Reply at 7. Similarly, they speculate that their odds of getting judicial clerkships have dropped but admit they haven't even applied for any. MTD at 21.

F.    <u>Defamation</u>

Defendants have also provided well-founded and substantial reasons for dismissal of the

defamation claim. This claim is based on the Defendants' alleged sharing of the "dossier" with a

single professor, and on Professor Monica Bell's comments that she thought the lawsuit was

frivolous. *See generally* SAC ¶¶ 99–100.

First, the allegations complain entirely of statements of opinion, not fact. *See* MTD at

23-27, Reply at 7–8. "[A] defendant cannot be held liable for expressing a mere opinion."

*NetScout Sys., Inc. v. Gartner, Inc.*, 223 A.3d 37, 47 (Conn. 2020). The SAC alleges that

Cosgrove and Gerken shared a marked-up copy of the "dossier" "to show where Cosgrove

*believed* that Sierra and Gavin were lying," SAC ¶ 72, and that Professor Bell said the Plaintiffs

had "improper motivations and intentions" and were acting to "cause a stir" by filing this

lawsuit, which they do not "think they can win." SAC ¶¶ 80–82. These evaluative statements

constitute opinions. *See, e.g.*, *Johnson v. Schmitz*, 119 F. Supp. 2d 90, 101–02 & 102 n.5 (D.

Conn. 2000) (granting a motion to dismiss defamation claims against Yale faculty members and

Yale—under a vicarious liability theory—because the challenged statements made during an

evaluation of the plaintiff's work, including the statement that plaintiff's "ideas were ridiculous

and unoriginal," were "merely expressions of opinion"); *Traylor v. Parker*, 2016 WL 5003981,

at *4 (Conn. Super. Aug. 4, 2016) (finding "characterizing a lawsuit as frivolous, foolish or in

some other derogatory manner constitute matters of opinion").

Second, Professor Bell's statements cannot be imputed to Yale under the doctrine of

respondeat superior. *See* MTD at 27–28; Reply at 8–9. Indeed, the SAC alleges none of the

elements of respondeat superior, such as Professor Bell's duties as an employee, whether she was

engaged in those duties when she made her statements, and whether her statements aimed to

11

serve Yale. *See Doe v. Danbury Hosp.*, 2021 WL 402055, at *3 (Conn. Super. Jan. 12, 2021) (dismissing claims alleged under a vicarious liability theory because the complaint lacked factual allegations that the employee's actions were intended to further her employer's interests).

* * *

While the Court should not prejudge or predict its ruling on Defendants' motion to dismiss, the above summary shows that the motion presents substantial arguments for dismissal and could significantly narrow, if not eliminate, the issues in this case. Proceeding with discovery before that motion is resolved would waste the parties' resources—and, as the next section shows, potentially the Court's as well.

## II.     The Breadth and Burden of Discovery Weigh in Favor of a Stay.

This motion should also be granted because of the breadth of the anticipated discovery. A stay would prevent "expensive and wasteful discovery during the pendency of a determination which could potentially reshape pending claims." *See ITT Corp.*, 2012 WL 2944357, at *2.

As an initial matter, when considering the exercise of its inherent authority and broad discretion to stay proceedings "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants," *Louis Vuitton Malletier S.A.*, 676 F.3d at 96, the Court may wish to consider the experiences that other judges in this District have had with Plaintiffs' counsel during discovery. In the *Kalra* case cited above, Judge Dooley sanctioned the plaintiffs for "egregious" discovery abuses, nearly all of which occurred while Plaintiffs' counsel—who signed the complaint in this case—was the sole attorney representing the *Kalra* plaintiffs.[4] As Judge Dooley recently noted:

---

[4] That attorney was the only counsel appearing for the *Kalra* plaintiffs from its removal to federal court on February 12, 2018 until at least April 26, 2020, when additional counsel moved for admission *pro hac vice*. *Kalra v. Adler Pollock & Sheehan P.C.*, 3:18-cv-00260 (KAD), ECF

> Time and again, this Court has ordered the Plaintiffs to meet their discovery
> obligations. Time and again, the Plaintiffs have failed to do so. At this juncture,
> the only remaining question is what the consequences shall be for this egregious
> course of conduct by the Plaintiffs.

*Kalra v. Adler Pollock & Sheehan, P.C.*, 3:18-CV-00260 (KAD), ECF No. 132 (D. Conn. Jan.

25, 2021) (attached as Ex. B) at 1; *see also id.* at 5–9, 12–15 (detailing extensive history of

discovery misconduct, including failures to comply with three separate court-ordered discovery

deadlines in 2019, while Plaintiffs' counsel represented the plaintiffs in that case); s*ee also*

*Kalra*, 3:18-CV-00260 (KAD), ECF No. 61 (D. Conn. Jan. 21, 2020) (first order imposing

sanctions against plaintiffs for 2019 discovery misconduct).  The Court's exercise of its inherent

authority and discretion is appropriately informed by the recent experiences of judges in the

District.

      Moreover, Plaintiffs' allegations involve several YLS deans and professors whom

Plaintiffs presumably intend to depose, as they have indicated in the Rule 26(f) Report that they

intend to take ten depositions. Plaintiffs have also proposed in that report that depositions begin

immediately, meaning that absent a stay, at least three senior YLS officials instrumental to student

life and faculty governance—Dean Heather Gerken, Associate Dean of Student Affairs Ellen

Cosgrove, and the YLS Director of Diversity Equity & Inclusion ("DEI"), Yaseen Eldik—would

likely have to review documents and prepare for and attend depositions. So too with several YLS

professors who were not sued but are named (or unnamed but clearly referenced) in the SAC.

Finally, the student who compiled the document purporting to catalogue the Plaintiffs'

misdeeds—a former friend of Plaintiffs—would probably also have to go through this process.

Indeed, the Plaintiffs' Rule 26(a) affirmative disclosures, served on February 14, 2022, make

---

No. 83 (D. Conn. Apr. 26, 2020). He moved to withdraw as the *Kalra* plaintiffs' attorney on May
21, 2020. *Kalra*, 3:18-cv-00260 (KAD), ECF No. 91 (D. Conn. May 21, 2020).

plain just how far their discovery aims to sweep. They name, as "individuals known to Plaintiffs [who] may have discoverable information," not only the two deans, the DEI director, and the student who compiled the "dossier," but also Yale University President Peter Salovey, Yale University Provost Scott Strobel, Yale Law School Deputy Dean and Professor Ian Ayres, Yale Law School Counselor to the Dean and Professor Michael Wishnie, several other Yale Law School professors, several past or present Yale Law School students not named in the SAC, and University of Michigan Law School Professor Leah Litman.

All told, the discovery that Plaintiffs seek would cause significant disturbance within the YLS community and beyond. (It will likely also create significantly more press attention for Plaintiffs, who not long ago claimed to want to avoid being placed in the spotlight.) If Plaintiffs' claims survive a motion to dismiss, then that disturbance is a necessary cost of the pursuit of justice. But if their claims might not survive a motion to dismiss—or if they will be narrowed in a way that minimizes the disturbance, either by eliminating defendants or causes of action—then that discovery should be paused until the Court determines which (if any) claims should proceed. Even narrowing the litigated claims would substantially diminish the cost and burden of discovery for both sides—and potentially for the Court.

A stay pending the resolution of Yale's motion to dismiss would allow an efficient and measured approach to discovery management in this case.

### III.    Plaintiffs Would Not Be Prejudiced by a Brief Stay.

Plaintiffs would not suffer any prejudice from a stay of discovery, as there is no compelling need for immediate discovery. "Absent circumstances presenting a compelling need for prompt discovery—as there might be if, for example, provisional relief were being sought or if testimony needed to be preserved due to the ill health of a witness— . . . the principles

14

underlying *Twombly* counsel in favor of granting [a] motion to stay." *DSM Desotech Inc. v. 3D Sys. Corp.*, 2008 WL 4812440, at *3 (N.D. Ill. Oct. 28, 2008); *see also, e.g.*, *In re First Constitution Shareholders Litig.*, 145 F.R.D. 291, 294 (D. Conn. 1991) (staying discovery pending the resolution of the motion to dismiss, noting "it is likely that discovery will be protracted and it is highly unlikely that the case will be tried within the immediate future; therefore, plaintiffs are not unduly delayed if discovery is stayed for what is expected to be a relatively short period of time"). In sum, "[t]he prejudice to plaintiff from a stay of discovery will be minimal, as discovery will only be stayed until a decision is reached on the Motion to Dismiss." *Cuartero*, 2006 WL 3190521, at *3. As the Rule 26(f) Report notes, the parties have conferred on document preservation, and there is no reason to think that a presumably brief pause in discovery will deprive Plaintiffs of access to preserved documents or the opportunity to ask witnesses questions under oath at their depositions.

If the motion to dismiss is granted, then both parties will have saved considerable time and expense. If the motion to dismiss is denied, then Plaintiffs will have ample opportunity to conduct all discovery to which they may be entitled.

## CONCLUSION

The Court should stay discovery pending the resolution of Defendants' pending and fully-briefed motion to dismiss.

Respectfully submitted,

*/s/ Jonathan M. Freiman*
Jonathan M. Freiman (ct24248)
Paul A. Tuchmann (ct8128)
WIGGIN AND DANA LLP
One Century Tower
265 Church Street

15

PO Box 1832
New Haven, CT 06508-1832
jfreiman@wiggin.com
ptuchmann@wiggin.com
Tel.: (203) 498-4400
Fax: (203) 782-2889

**Counsel for Defendants**